Elizabeth A. Fitzgibbon, Pro Se
308 Oak St., Neenah, WI 54956
+1 (920) 450-9277
wied@thecaseofthemissingmsa.org
Plaintiff



U.S. District Court
Wisconsin Eastern

**JAN – 6 2025**

FILED
Clerk of Court

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Elizabeth A. Fitzgibbon, | Case No. |
| Plaintiff(s), | **ORIGINAL COMPLAINT FOR JANUARY 6-12, 2023 CIVIL RIGHTS DEPRIVATION** |
| v. | |
| Bryan Keberlein, in his Individual Capacity and his Official Capacity as Presiding Branch III Judge of Winnebago County Circuit Court, Judiciary Courts Of The State Of Wisconsin; Missy Woldt, in her Individual Capacity; Stephanie Koenigs, in her Individual Capacity; Tara Berry, in her Individual Capacity and her Official Capacity as Clerk of Court for Winnebago County; Adam Fitzgibbon, in his Individual Capacity, | Code: |
| | Judicial Officer: |
| | Courtroom: |
| | Hearing Date & Time: |
| Defendant(s). | DEMAND OF JURY TRIAL ON ALL ISSUES SO TRIABLE |

Elizabeth A. Fitzgibbon ("Plaintiff", "Elizabeth") files this initial complaint and respectfully alleges as follows. Plaintiff anticipates amending this pleading and seeking joinder of additional similarly situated plaintiffs ("Future Plaintiffs", e.g. State of Wisconsin, U.S. Government Agency and Departments, Agencies) within the time permitted by Fed. R. Civ. P. 15 and 20. Until amended, this and all (potential) related claims are solely asserted by the Plaintiff.

# I. TABLE OF CONTENTS

I.   TABLE OF CONTENTS.................................................................................2

II.  PRELIMINARY STATEMENT.....................................................................3

III. JURISDICTION AND VENUE.....................................................................5
   A. Federal Question ....................................................................................5
   B. Declaratory and Injunctive Power ...........................................................5
   C. Venue.......................................................................................................5
   D. Rooker-Feldman and the Independent Injury Doctrine ..........................5
   E. Eleventh Amendment and Official Capacity............................................6
   F. Abstention and the Domestic Relations Exception ..................................7
   G. Timing and Accrual of Claims.................................................................7

IV.  PARTIES ......................................................................................................9

V.   LEGAL FRAMEWORK ...............................................................................10

VI.  STATEMENT OF FACTS ............................................................................14

VII. RESERVATION OF RIGHTS ......................................................................29

VIII. CLAIM FOR RELIEF .................................................................................31
   A. Count I: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment ...................31
   B. Count II: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment..................34
   C. Count III: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment ...............37
   D. Count IV: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment................38
   E. Count V: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment .................40
   F. Count VI: Violation of 42 U.S.C. § 1985 – Conspiracy, Obstruct Justice.........41
   G. Count VII: Violation of 42 U.S.C. § 1983 – Integral Participation..................43
   H. Count VIII: Violation of 42 U.S.C. § 1983 – Integral Participation .................44

IX.  JURY DEMAND ...........................................................................................46

X.   PRAYER FOR RELIEF .................................................................................46
   A. Declaratory and Injunctive Relief (Official Capacity).............................46
   B. Monetary Damages (Individual Capacity)...............................................48
   C. Fees and Costs ........................................................................................49
   D. Other Relief.............................................................................................49

Case 1:26-cv-00023-BBC    Filed 01/06/26    Page 2 of 49    Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

## II. PRELIMINARY STATEMENT

1.      This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1985(2) to redress a sophisticated fraud upon the court that transitioned from administrative negligence into a systematic enterprise of record fabrication and executive coercion. At its core, this case involves a state judicial officer, his staff, the Clerk of Court, and a private citizen who conspired to insulate Winnebago County from liability for a 333-day jurisdictional vacuum. This action seeks redress specifically for the independent constitutional injuries caused by the January 6, 2023, act of fabrication—a coordinated effort to provide a seal of State authority to a known legal impossibility. While the initial loss of the record provided the motive for the cover-up, the injuries litigated herein are distinct from the underlying merits of the state court litigation and the collateral financial or custodial harms reserved for future actions.

2.      The "Original Sin" of this litigation began in early 2022, when the Winnebago County Clerk of Court irretrievably lost the parties' final, intended MSA. Rather than following statutory procedures to correct the record to achieve a lawful divorce, a judge—acting as a County Risk Manager with the integral participation of his staff and the perjured assistance of a private citizen—crafted a "reconstructed" MSA and backdated judgment on January 6, 2023, to insulate the State from the consequences of its own negligence. This was not a judicial adjudication of a dispute, but a non-judicial act of administrative document production. To give this fabrication the force of law, the Defendants simulated a judicial process that never occurred: They backdated the record to February 7, 2022, to bridge the 333-day gap of negligence, fraudulently attributed judicial approval of the counterfeit MSA to a retired Family Court Commissioner (*functus officio*), and entered the document into the public record as a known legal impossibility.

3.      The resulting injury is not merely financial, but existential. By

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

manufacturing a counterfeit exit from the marriage through a void decree, the Defendants have effectively trapped Plaintiff in a state of legal purgatory. Because a jurisdictional nullity cannot legally dissolve a marriage, Plaintiff remains legally tethered to the very union the State purports to have terminated. This status-fraud constitutes a permanent cloud on Plaintiff's legal identity and an unconstitutional prior restraint on her fundamental right to marry another—a liberty interest protected by the Fourteenth Amendment and the principles of *Loving v. Virginia*, 388 U.S. 1 (1967) and *Obergefell v. Hodges*, 576 U.S. 644 (2015).

4.  As established in *Forrester v. White*, 484 U.S. 219 (1988) and recently applied in *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023), absolute immunity does not attach to administrative, legislative, or executive functions. By manufacturing evidence and falsifying public records to "cure" a clerical defect, the judge performed administrative acts in the clear absence of all jurisdiction. Similarly, the ministerial defendants, including the Clerk of Court, are stripped of immunity for their non-discretionary acts in losing the original record and affirmatively laundering a counterfeit replacement. Because a judgment procured through such extrinsic fraud is a legal nullity, this Court is not asked to review a state court judgment, but to redress the extra-judicial conduct that prevented a valid judgment from ever existing.

5.  This lawsuit seeks to hold all participants accountable, declare the fraudulent records *void ab initio*, and vindicate Plaintiff's Fourteenth Amendment rights to due process, judicial integrity, and the restoration of her legal status; thereby ensuring that the State's administrative fiction can no longer serve as a prior restraint on her fundamental liberty to seek a lawful dissolution and exercise her right to marry.

# III.  JURISDICTION AND VENUE

**A.  Federal Question**

6.      This action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985(2), and the doctrine of local government liability set forth in *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), to redress the deprivation of rights secured by the Fourteenth Amendment and the conspiratorial obstruction of justice in state proceedings. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

**B.  Declaratory and Injunctive Power**

7.      This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65, particularly as it relates to the 1996 amendments to § 1983 regarding judicial officers.

**C.  Venue**

8.      Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b). A substantial part of the events and omissions giving rise to these claims occurred in Winnebago County, Wisconsin. Furthermore, all Defendants reside in or conduct official business within this District.

**D.  Rooker-Feldman and the Independent Injury Doctrine**

9.      This action is not an appeal of a state court judgment, nor does it seek to fix or overrule a domestic relations decree. Instead, Plaintiff seeks redress for independent constitutional injuries caused by the Defendants' extra-judicial conduct in the manufacture and certification of a counterfeit record, which prevented a valid judgment from ever existing.

      a.  <u>Extrinsic Fraud</u>: Plaintiff alleges extrinsic fraud—conduct that occurred outside the adversarial process (the backdated manufacture of a record)—which prevented the State court from ever exercising

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

valid jurisdiction.

b. <u>Administrative Fabrication</u>: The "reconstruction" of the MSA was a non-judicial act of record production. Because manufacturing a record to bridge a jurisdictional gap is an administrative function—not a role authorized by the State's judicial power—the resulting document is not a "Judgment" entitled to federal deference.

c. <u>Independent Harms</u>: Pursuant to the *Independent Injury Doctrine*, Plaintiff seeks damages for the harms caused by the act of fabrication itself. The creation and certification of a counterfeit, backdated public record constitutes a stand-alone deprivation of Plaintiff's Fourteenth Amendment right to procedural and substantive due process. These injuries—including the immediate destabilization of Plaintiff's legal status and the deprivation of a truthful judicial record—are separate and distinct from the underlying state court merits and exist regardless of the ultimate disposition of the State case.

d. <u>Legal Impossibility</u>: Because the record purports to be authorized by a retired official who lacked all judicial power at the time of the record's creation, the document is a legal impossibility and a ministerial nullity. It is not a judgment entitled to federal deference, but a clerical fabrication.

**E.    Eleventh Amendment and Official Capacity**

10.    While the Eleventh Amendment may bar certain claims for damages against the State, it does not bar claims for declaratory or injunctive relief against state officials in their official capacity. Plaintiff's request for a declaration that the January 6, 2023, record is void ab initio falls squarely within the *Ex Parte Young* exception. Furthermore, as the Clerk of Court is a final policymaker for the County's judicial administrative functions, this Court has jurisdiction over the entity-level constitutional failures pursuant to *Monell v. Dept. of Social Services,*

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

436 U.S. 658 (1978).

## F. Abstention and the Domestic Relations Exception

11. This action does not require this Court to issue a divorce, award alimony, or determine child custody. Instead, this Court is asked to determine whether state actors violated the Fourteenth Amendment by falsifying a public record. Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them, especially when State-sanctioned fraud is the core of the complaint. As the Seventh Circuit held in *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), the domestic relations exception does not bar a § 1983 action where the plaintiff alleges a conspiracy to deprive her of due process through the manipulation of the judicial process. Because the January 6, 2023, record is a procedural nullity, the concerns of comity and abstention are not triggered; there is no valid state interest in the preservation of a counterfeit record.

## G. Timing and Accrual of Claims

12. Continuing Violation and Systematic Fraud: Plaintiff's claims are timely filed as they arise from a continuous course of unconstitutional conduct. While the fraudulent "reconstruction" and backdating of records were initiated on January 6, 2023, the constitutional injury remains active as the Defendants continue to maintain the counterfeit record as a valid instrument of the State. The ongoing nature of this violation is evidenced by the Defendant Judge's transition from an adjudicator to an executive enforcer; specifically, utilizing the threat of incarceration and the appointment of a Receiver to compel Plaintiff's submission to the 2023 fabrication. While Plaintiff explicitly reserves the right to seek separate damages for the resulting property seizures and custodial harms in a subsequent action, these recent enforcement acts are cited here as evidence of the continuous nature of the fraud and the Defendants' transition into non-judicial functions.

13. Discovery Rule and Finality: Under the Discovery Rule, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury. Plaintiff

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

diligently sought to vacate the fraudulent record through the state appellate process. Under principles of federalism, the full extent of the constitutional injury did not reach ultimate finality—and thus the statute of limitations did not fully accrue—until the conclusion of the appellate and federal review process.

14. <u>United States Supreme Court Timeline</u>: The finality of the state court's fraudulent record was only cemented upon the exhaustion of all federal appeals. Plaintiff filed a Petition for *Writ of Certiorari* with the United States Supreme Court on May 9, 2025. Certiorari was denied on October 6, 2025. Plaintiff timely filed a Petition for Rehearing on October 30, 2025, which was denied by the United States Supreme Court on December 15, 2025. This filing, occurring in early 2026, is well within the limitations period following that final denial.

15. <u>The Final Act Doctrine</u>: In the context of a § 1983 conspiracy, the limitations period begins to run from the date of the last overt act in furtherance of the conspiracy. While the core of this action seeks redress for the creation and certification of the January 6, 2023, record, the conspiracy reached its predatory maturity on May 9, 2025. This 2025 "executive pivot"—where the administrative fraud was finally weaponized to authorize the seizure of encumbered property—demonstrates the intended direction and ultimate purpose of the January 6, 2023, fabrication. This ensures the action is timely under the *Continuing Violation Doctrine*, as the constitutional injury remained active and evolving until the 2023 fabrication was put to its final, intended use. While Plaintiff cites this 2025 act as the final overt act for purposes of timeliness, she explicitly reserves her right to seek damages for the resulting property seizures and custodial harms in subsequent, separate litigation.

16. <u>Nullity and Fraud upon the Court</u>: Pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire* Co., 322 U.S. 238 (1944), a judgment obtained through fraud upon the court is a wrong against the institutions of justice that can be vacated at any time. Because the January 6, 2023, record is a procedural nullity (*void ab initio*), it

never acquired the legal status necessary to trigger a standard statute of limitations bar against a challenge to its validity.

## IV.  PARTIES

17.  <u>The Plaintiff</u>: Elizabeth Fitzgibbon is a natural person residing at 308 Oak Street, Neenah, Wisconsin 54956. She is the victim of the constitutional deprivations and administrative record fabrication alleged herein.

18.  <u>The Judicial Defendant</u>: Bryan Keberlein is a natural person who, at all times relevant, was a Circuit Court Judge for Winnebago County, Wisconsin. His official business address is Winnebago County Courthouse, 415 Jackson Street, Oshkosh, Wisconsin 54901. He is sued under 42 U.S.C. §§ 1983 and 1985(2) in the following capacities:

    a.  <u>Official Capacity</u>: For purposes of obtaining declaratory and injunctive relief to vacate the fraudulent records and stay unconstitutional enforcement of the same.

    b.  <u>Individual Capacity</u>: For his non-judicial, administrative, and ministerial acts performed in the clear absence of all jurisdiction for the purpose of shielding the State from administrative liability, for which he is liable for compensatory and punitive damages.

19.  <u>The Private Citizen Defendant</u>: Adam Fitzgibbon is a natural person residing at 451 Lowell Place, <u>Neenah</u>, Wisconsin 54956. Although a private citizen, he is sued in his individual capacity as a state actor under 42 U.S.C. § 1983 and as a conspirator under 42 U.S.C. § 1985(2).

    a.  <u>Joint Participation</u>: Pursuant to *Dennis v. Sparks*, 449 U.S. 24 (1980), Adam Fitzgibbon is liable as a joint participant who willfully engaged in a prohibited conspiracy with state officials to manufacture a fraudulent judicial record.

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

b. <u>Obstruction of Justice</u>: Under 42 U.S.C. § 1985(2), he is liable for his role in a quadripartite conspiracy to obstruct the due course of justice by providing the fabricated "raw material" for a counterfeit record.

20. <u>The Ministerial Defendants</u>:

a. <u>Defendant Tara Berry</u> is a natural person who, at all times relevant, was the Clerk of Circuit Court for Winnebago County. She is sued under 42 U.S.C. §§ 1983 and 1985(2) in her individual capacity for her personal participation in the record fabrication, and in her official capacity as the final <u>policymaker</u> for the Clerk's Office regarding the systemic failures and custom of clerical chaos alleged herein.

b. <u>Defendant Missy Woldt</u> is a natural person who, at all times relevant, was employed as a Judicial <u>Assistant</u> for the Winnebago County Circuit Court. She is sued in her individual capacity under 42 U.S.C. §§ 1983 and 1985(2) for her ministerial and integral participation in processing and filing a record she knew to be a legal impossibility.

c. <u>Defendant Stephanie Koenigs</u> is a natural person who, at all times relevant, was employed as a Court Reporter for the Winnebago County Circuit Court. She is sued in her individual capacity under 42 U.S.C. §§ 1983 and 1985(2) for her ministerial and integral participation in certifying and memorializing a fraudulent judicial proceeding to give the *color of law* to a non-judicial act.

21. All Defendants at all times relevant acted under color of state law, or in joint participation with those acting under color of state law, to deprive Plaintiff of her clearly established <u>constitutional</u> rights.

## V. LEGAL FRAMEWORK

22. While this Court is undoubtedly familiar with most U.S. authorities,

Case 1:26-cv-00023-BBC    Filed 01/06/26    Page 10 of 49    Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

including U.S. Codes ("U.S.C.") and the U.S. Constitution, Plaintiff overviews (below) the State of Wisconsin Chapters and Statutes that pertain to this case. None of these statutory simplifications are intended to be legal arguments, but instead serve to quickly contextualize the complaint.

23.     Wisconsin judicial operations. The general provisions concerning Wisconsin courts of record, judges, attorneys, and clerks are defined in Chapter 757, including:

24.     §757.19: All state judges and justices "shall disqualify" under certain situations (e.g. judge/justice (b) is a party or material witness; (c) previously acted as counsel to any party in the action; (d) prepared as counsel any legal instrument or paper whose validity or construction is at issue; (e) has a significant financial or personal interest in the outcome of the matter; (f) appears cannot act in an impartial manner.)

25.     §757.69: Limited powers and duties granted to state circuit court commissioners. Specifically, §757.69(1)(p) concerns adjudication of Family Code matters. Critically, §757.69(1)(p)(1) states, "If the circuit court commissioner does not approve an agreement between the parties on material issues, the action shall be certified to the court for trial."

26.     §757.54(1): Clerk of Court retention and disposal of all court records and exhibits in any civil …action or proceeding… shall be determined by the supreme court by rule", which in the relevant period, is Supreme Court Rule (SCR) 72. SCR 72.01(11) requires Family case files (all documents deposited with the clerk) retained for the period relevant to this case (e.g. 40 years).

27.     §757.57(5): Court Reporter "shall make a transcript of the verbatim record… duly certified…to be a correct transcript."

28.     §757.94(2)   Privilege; immunity.   "A presiding judge …is immune from civil liability for any conduct in the course of the person's official duties under ss. 757.81 to 757.99."

29.     Wisconsin Domestic Relations / Family Law. §765.001(1) states, "Chapters

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

765 to 768 may be cited as "The Family Code"". Of relevance to this complaint, Chapter 765 legislatively creates a judicial power to declare two persons married through state-run marriage licenses. Chapter 766 defines property rights of married persons ("marital property"). Chapter 767 defines adjustments to marriages (annulment, divorce, legal separation) of married persons.

30.    §765.01 Marriage is "a civil contract, to which the consent of the parties capable in law of contracting is essential, and which creates the legal status of husband and wife."

31.    §765.05 explains marriage licenses "No person may be joined in marriage within this state until a marriage license has been obtained". Critically, the State of Wisconsin is the licensor, therefore the party granting the license per the rules set forth by the State of Wisconsin Legislature. Blacks Law 9th Edition defines:

> license, n. (15c) 1. A permission, usu. revocable, to commit some act that would otherwise be unlawful;
>
> license fee. 1. A monetary charge imposed by a governmental authority for the privilege of pursuing a particular... activity. 2. A charge of this type accompanied by a requirement that the licensee take some action, or be subjected to regulations or restrictions.

32.    §765.03(2) states, "It is unlawful...to marry again until ...after judgment of divorce is granted". §765.04(1) prevents marriage abroad to circumvent §765.03(2). §765.09 adds, "No application for a marriage license may be made by persons lawfully married".

33.    Critically, Wisconsin marriages (and marital dissolutions, known as divorces) are therefore solely born of and subject to statutory authority. Hence, "In a divorce proceeding, a trial court has only that authority given it by statute." *Zawistowski v Zawistowski*, 2002 WI App 86, 253 Wis.2d 630, 644 N.W.2d 252 (WI Ct.App., 2002).

34.    §767.201 In any action affecting a family, except as otherwise provided in the Family Code statutes, Chapters 801 to 847 generally govern procedure and practice.

Case 1:26-cv-00023-BBC    Filed 01/06/26    Page 12 of 49    Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

These chapters of statutes span Appeals, Writs Of Error, Replevin, Attachment, Garnishment, Injunctions, Ne Exeat, Receivers, Court Costs/Fees, Executions, Remedies, Arrest, Bail, Personal Property, Certification Of Questions Of Law, Child Custody Jurisdiction And Enforcement, Nuisances, and Real Property Actions.

35. §767.205(2) the State of Wisconsin is a real party in interest, though the State of Wisconsin is excluded from the §767.205(3) Title of Actions prescribed conventions.

36. §767.34 prescribes the Wisconsin judicial process for granting or declining a stipulated divorce. Critically, there are specific limitations to a court granting a divorce, so on behalf of the State of Wisconsin (marriage licensor), the court must perform a review of the divorcees' proposed stipulated agreement (henceforth: Marital Settlement Agreement, "MSA") to ensure that it not only satisfies the divorcees, but the State of Wisconsin's statutory requirements. As such, a judicial official (e.g. Court Commissioner, Circuit Court Judge) must perform this statutory review on behalf of the State of Wisconsin. In so doing, the judicial officer represents the statutory interests of the untitled party known as the State of Wisconsin, while also acting as the court-assigned adjudicator for the divorce case. Critically, consensus is required between the State of Wisconsin (via its representative judicial officer) and divorcees ("meeting of the minds") to achieve a "meeting of the minds", a stipulated divorce, and its memorialization: a divorce Judgment with MSA (a tripartite agreement / contract).

    a. Court "approval of such agreements is necessary to uphold the active third-party interests which the state has in divorce cases...the provisions become its own judgment." _Ray v. Ray_, 57 Wis.2d 77,84, 203 N.W.2d 724 (1973).

    b. "Marriage is not simply a contract between two parties... state has a special interest...spouses...contract in the shadow of the court's obligation to review" _Button v. Button_, 131 Wis.2d 84,94, 388 N.W.2d

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

546 (1986).

    c.  "marriage is a civil contract to which there are three parties: the husband, the wife and the State" *Linneman v. Linneman*, 1 Ill.App.2d 48,50, 116 N.E.2d 182 (1954).

37. Applicable to this case, local court rules further specify stipulated hearing details with Court Commissioners. (By contrast, local court rules also specify the process by which courts agree to conduct and achieve a divorce judgment §767.35 by trial, in the event a three-party "meeting of the minds" stipulated agreement cannot be reached.)

38. §806.07 specifies terms by which a party or legal representative may gain relief from a judgment, order or stipulation. Such terms include (among others) (1)(a) mistake, (b) newly-discovered evidence, (c) fraud, misrepresentation, misconduct of an adverse party... (h) any other reason justifying relief. The statute is silent on providing remedies or granting powers other than relief (e.g. creating a contract). Per *Neylan v. Vorwald*, 124 Wis. 2d 85, 96-98 (1985), while §806.07 "is substantially equivalent to Federal Rule 60(b)", it "presupposes the entry of a valid judgment... It has nothing whatsoever to do with the vacation of a void judgment."

39. §893.80 (titled "Claims against governmental bodies or officers, agents or employees; notice of injury; limitation of damages and suits") is the statute generally granting Wisconsin governmental immunity from civil liability. Critically, it is excluded from the Family Code and all relevant portions of the generally applicable Chapters 801 to 847.

## VI. STATEMENT OF FACTS

40. What began as Elizabeth and Adam Fitzgibbon's routine stipulated divorce hearing on February 7, 2022, before Family Court Commissioner (FCC) John Bermingham, devolved into an unprecedented legal failure when, in March 2022,

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

the parties received a different couple's Marital Settlement Agreement (MSA) attached to their mailed divorce judgment.

41.     Upon reporting the error, Elizabeth learned from Winnebago County Clerk of Court, Defendant Tara Berry, that the parties' final, intended MSA—submitted on January 28, 2022, had been lost somewhere within the court's chain of custody prior to the February 7, 2022, hearing. Consequently, the February 7, 2022, hearing had mistakenly proceeded under a nullified original MSA proposal.

42.     Because the parties reasonably relied on the court to return the final, approved document following their divorce hearing, neither had retained a duplicate. This left only the parties' nullified original MSA on the record. Adam immediately moved to exploit this State-created chaos for financial gain. Recognizing that the parties' nullified original MSA from January 7, 2022, contained terms far more favorable to him than the equitable (and lost) January 28, 2022, proposal, Adam attempted to lock in this inequity. He treated the nullified original MSA as operative and sought to refinance the marital home under its invalid terms.

43.     Adam's initial refinancing efforts were stalled, however, when a third-party lender discovered yet another failure by the Winnebago County Clerk of Court: The nullified original MSA from January 7, 2022, had been scanned into the record with two pages missing (pages 3 and 4). This rendered the document—the only version the State possessed—facially defective and legally unusable for Adam's purposes. Rather than seeking a lawful correction at that point, he chose to weaponize the legal ambiguity, maintaining near-exclusive control over the parties' marital securities, investments, and the family residence, effectively stripping Elizabeth of her property interests without a valid legal basis.

44.     In response, on April 5, 2022, Elizabeth submitted a formal request for judicial intervention to FCC Bermingham, detailing the ballooning financial and custodial crisis. In response, FCC Bermingham scheduled a telephone conference

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

for April 26, 2022, to begin untangling the procedural chaos.

45. On April 26, 2022, the full extent of the administrative breakdown was memorialized during a telephone conference before FCC Bermingham. He confirmed that:

    a. The parties' final, intended MSA from January 28, 2022, was never scanned into the court's electronic record.

    b. The document had been irretrievably lost while in the court's exclusive chain of custody.

    c. He had never reviewed or approved the final, intended MSA from January 28, 2022.

    d. The February 7, 2022, judgment was mistakenly entered based on the nullified original MSA from January 7, 2022.

    e. The parties' final, intended MSA could not be reconstructed by the parties.

46. With that, FCC Bermingham ordered Elizabeth and Adam to co-create a new MSA within ten days to replace the proposal lost by the court. He mandated that the new MSA reflect the terms captured on the court's digital audio recording (DAR) from the February 7, 2022, hearing—specifically, a 60/40 placement schedule in Elizabeth's favor and child support of $765 per month to Elizabeth. A new default divorce hearing was scheduled for May 23, 2022, contingent upon the completion of the new MSA proposal.

47. Minutes after the conference concluded, Adam sent Elizabeth a message signaling his intent to extort custodial concessions for the creation of the new MSA and divorce. He conditioned his compliance with FCC Bermingham's 10-day MSA co-creation order on Elizabeth's agreement to an unauthorized "50/50" placement split, directly contradicting FCC Bermingham's instructions. When Elizabeth refused to yield to this coercion in light of the worsening custodial harms, Adam's conduct escalated from procedural obstruction to retaliatory hostility. As a result,

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

Elizabeth hired Attorney Joseph Putzstuck to represent her.

48. Despite the total absence of progress on the April 26, 2022, MSA co-creation order—caused exclusively by Adam's refusal to participate—Elizabeth appeared at the Winnebago County Courthouse on May 23, 2022, for the scheduled default divorce hearing. She did so under the reasonable expectation that the court would exercise its authority to address Adam's MSA co-creation non-compliance and enforce the April 26, 2022, order so that the parties could properly divorce.

49. Upon arrival, however, Elizabeth was turned away. A bailiff informed her that the hearing had been rescheduled to July 25, 2022. This postponement was not the result of a judicial finding or a formal motion; rather, it was a decision made between the attorneys Culp and Putzstuck without Elizabeth's knowledge, input, or consent.

50. While the divorce delay was presented as an accommodation to allow Adam additional time to comply with the April 26, 2022, MSA co-creation order, the practical effect was a two-month State-sanctioned extension of the "wild west" financial and custodial environment Adam created upon discovering the unprecedented divorce situation the parties faced. As such, Elizabeth retained new counsel, Attorney Stephen Fozard, in a final effort to swiftly force the case back into the light of lawful resolution. Unfortunately, the default divorce hearing—already delayed from May to July—was postponed again, this time by the court itself, to September 9, 2022, citing staffing issues because FCC Bermingham had since retired.

51. To resolve this prolonged jurisdictional no-man's land that continued to expose Elizabeth to significant financial and custodial harm, Attorney Fozard filed a motion under Wis. Stat. § 806.07 to formally declare the February 7, 2022, "divorce" void and unenforceable. This was not a mere formality; it was a necessary defensive action to prove that the statutorily required three-party meeting of the minds had never occurred. FCC Bermingham had already acknowledged this

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

deficiency on April 26, 2022, when he ordered the co-creation of a new MSA and scheduled a new default divorce hearing, but with him no longer available to testify to the procedural defects he had personally witnessed, Elizabeth faced an extreme risk that Adam would continue to harm their young child and manipulate lenders, institutions, and subsequent court officials by presenting a counterfeit legal reality.

52. While the § 806.07 motion was delayed to be heard until September 9, 2022, Elizabeth's path to justice was again sabotaged, and again from within, so she severed her professional relationship with Attorney Fozard and retained Attorney Larry Vesely.

53. On September 9, 2022, the represented parties appeared before the newly appointed FCC Michael Rust for the twice-rescheduled default divorce hearing. However, the proceeding was immediately consumed by the events outlined in Elizabeth's second emergency request for judicial intervention: her effort to restore placement of the parties' child. Exploiting the ongoing legal vacuum, Adam had engaged in a consecutive 79-day withholding of the parties' child from Elizabeth, resulting in severe parental alienation. As such, the parties' default divorce hearing again did not occur, and FCC Rust routed Elizabeth's § 806.07 motion to newly appointed Defendant Judge Bryan Keberlein, who scheduled it to be heard on November 16, 2022. Unfortunately, however, Defendant Judge Keberlein soon downgraded the November 16, 2022, hearing from Elizabeth's § 806.07 motion to a mere status conference at the request of Attorney Culp.

54. During the November 16, 2022, proceeding, Defendant Judge Keberlein acknowledged the extraordinary and unusually protracted nature of the case and ordered a new timeline: The parties were to exchange lists of MSA issues by November 30, 2022, complete depositions to further resolve discrepancies on December 7, 2022, and return for a follow-up conference on December 20, 2022. He emphasized a preference for collaborative negotiation, stating, "I think there's a lot of power in the parties coming up with their own agreement... as opposed to the

Court cutting things in half with a chainsaw."

55.     Despite the timeline ordered on November 16, 2022, Adam and Attorney Culp abandoned their court-ordered obligations. Rather than exchanging a list of MSA issues, Attorney Culp issued a letter to Elizabeth's counsel that:

    a.  <u>Fabricated a Procedural Reality</u>: It falsely asserted that Elizabeth was attempting to "reopen" a valid divorce through her § 806.07 motion, willfully ignoring the fact that no valid judgment had ever been entered.

    b.  <u>Weaponized a Nullity</u>: It insisted that the "missing pages" of the nullified original MSA from January 7, 2022, were the primary issue of the case, despite it being a document that no judicial officer had ever recognized as operative because it had been superseded by the parties' January 28, 2022, proposal that was lost by the court.

    c.  <u>Threatened the Court Process</u>: It warned that granting Elizabeth's § 806.07 motion would create an "incredible mess," effectively using the State's own administrative errors as a shield against accountability.

56.     By insisting that a valid divorce existed despite FCC Bermingham's April 26, 2022, admission to the contrary, Adam and Attorney Culp actively obstructed the court's duty to ensure a lawful proceeding.

57.     This campaign of obstruction culminated on December 5, 2022, when Adam and Attorney Culp parted ways. As a result, the court-ordered December 7, 2022, depositions never occurred, ensuring that no material progress was made toward co-creating a new MSA. Therefore, the December 20, 2022, status conference marked a definitive turning point in the litigation, as Defendant Judge Keberlein deviated from both the established record and the lawful procedural requirements for a divorce. Citing the parties' lack of progress—caused by Adam's obstruction—Defendant Judge Keberlein inaccurately asserted that FCC Bermingham had, on April 26, 2022, ordered the parties to "reconstruct" the lost MSA. This assertion was

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

a material departure from the record, wherein FCC Bermingham had explicitly acknowledged the document was irreproducible and had therefore mandated the parties co-create a new proposal.

58.     As a result of this procedural distortion, Defendant Judge Keberlein imposed a novel requirement: By December 31, 2022, each party was ordered to submit a summary of what they "believed" the lost MSA was comprised of. In closing the hearing, Defendant Judge Keberlein announced, "What... I'm afraid is going to happen is that our list of... [MSA issues] is going to be three pages in a matter of weeks... so what I want then is... would be to take the marital settlement agreement, make any changes that you think you agreed to. And I want the parties to understand this: I -- given your sworn testimony before Court Commissioner Bermingham [on April 26, 2022, where the parties swore that the MSA could not be reproduced], I believe you had an agreement, okay? Now, there may be some confusion or misunderstanding about it, but I think you agreed to something. The question for me to determine is what did you agree to... so what I'm going to do, when we come back, if [the parties' MSA 'I believe' statements are] not consistent [when we reconvene for January 6, 2023], I'm going to swear you in, I'm going to take testimony, and I'm going to determine who I think is being credible or not credible. Understand? ... But we will take care of the marital settlement agreement on the 6th so that we have a clear jumping off point..."

59.     Seizing the opportunity to exploit the court's new "reconstruction" mandate, Adam filed submissions on December 27 and 29, 2022, that were directly at odds with his prior, repeated admissions. For months, Adam had maintained—both in and out of court—that he could not recall the terms of the parties' final, intended MSA and that its reproduction was impossible. However, once Defendant Judge Keberlein invited subjective summaries for the purposes of its "reconstruction," Adam suddenly claimed to possess a detailed memory of the document's contents.

60.     On December 31, 2022, Attorney Vesely filed a 21-page submission in

compliance with Defendant Judge Keberlein's December 20, 2022, order. This filing reaffirmed the established reality: neither Elizabeth nor Adam could recall the specific terms of the lost MSA. It further detailed Adam's documented pattern of obstruction, highlighting his self-serving and contradictory proposals for asset allocations—proposals that were inconsistent in substance but consistently skewed in his favor.

61. The submission also addressed Adam's opportunistic focus on the "missing pages" of the parties' nullified original MSA and underscored the severe power imbalance and financial and custodial incentive for Adam's MSA obstruction; with near-exclusive control over the marital assets and the parties' child, Adam was actively leveraging the State's administrative failure to cement predatory advantages.

62. The morning of January 6, 2023, began with what amounted to a strategic admission of bad faith by Adam. Faced with the immediate prospect of testifying under oath regarding the "reconstruction" of a document he had long admitted was irreproducible, Adam attempted to abort the hearing before it commenced. He contacted Attorney Vesely, suddenly proposing mediation to co-create a new MSA.

63. Upon receiving this outreach, Attorney Vesely contacted Defendant Judge Keberlein's office and spoke with Defendant Missy Woldt. Attorney Vesely informed her of the parties' mutual agreement to pursue mediation and requested an adjournment of the hearing to return to a lawful, consensual divorce process.

64. After conferring with Defendant Judge Keberlein, Defendant Missy Woldt responded to Attorney Vesely via email. In a move that signaled the court's abandonment of neutral adjudication, she issued an all-caps demand that all parties appear for the hearing. By flatly refusing a mutual request for mediation, Defendants Judge Keberlein and Missy Woldt signaled the intent to force the "reconstruction" forward, regardless of the parties' willingness to abandon the fiction.

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

65. At the outset of the January 6, 2023, hearing, Defendant Judge Keberlein openly acknowledged that the parties' divorce case was "unique and extraordinary." He admitted the absence of a legal foundation, stating: "I don't have a memorialization of what was agreed to, that [Elizabeth and Adam] swore that they... agreed to, that they drafted. So to me, this is not a family issue right now; this is a contract issue."

66. Despite acknowledging that no documented MSA proposal existed, Defendant Judge Keberlein proceeded to act as both parties' "mind," declaring his intent to determine "what was agreed to" by having the parties "reconstruct" the lost MSA. He concluded with, "I'm going to determine what our MSA is going forward."

67. Defendant Judge Keberlein's attempt to reframe the January 6, 2023, proceeding as a "contract issue" was a fatal legal error that bypassed the very safeguards meant to protect Elizabeth. By applying private, commercial contract principles to a domestic relations matter, he disregarded the unique tripartite nature of divorce in Wisconsin—a status that requires the mutual assent of both spouses and the affirmative, equitable oversight of the State. Under Wisconsin law, a proposed MSA is not a binding contract; it is a mere offer that carries no legal weight until it is reviewed for fairness and formally incorporated into a final judgment. By treating a disputed, unverified document as a contract, Defendant Judge Keberlein effectively removed the State's oversight and replaced it with judicial coercion.

68. The deep irony, however, lies in Defendant Judge Keberlein's selective invocation of contract law to justify his administrative fabrication. While he used "contract" as a pretext to bypass statutory divorce procedures, he ignored the fact that the marriage itself is a civil contract in which the State is a party. When Elizabeth entered into this marriage contract under the State's oversight, she did so with a vested constitutional expectation that the State would adhere to its own statutory obligations—specifically the laws governing the lawful dissolution of that

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

contract. As established in *Muhlker v. New York & Harlem R. Co.*, 197 U.S. 544 (1905), judicial power cannot be exercised to take away rights which have been acquired by contract and have come under the protection of the Constitution. In this case, the Defendants used the *color of contract* to destroy the very due process rights the marriage contract was supposed to guarantee.

69. Ultimately, by determining for himself the existence and extent of a non-existent proposal, Defendant Judge Keberlein did not just misapply family law; he violated the foundational contract between the citizen and the State. He weaponized the label of "private contract" to mask a rogue exercise of authority, stripping the Plaintiff of her right to a meeting of the minds and replacing a lawful adjudication with a judicially manufactured fiction.

70. Under Defendant Judge Keberlein's direction, Adam was sworn in and effectively deputized to "reconstruct" the lost MSA from memory. He submitted an edited, self-serving draft to the court, which Defendant Judge Keberlein treated as a valid surrogate for the missing record. However, when Elizabeth was ordered to perform the same "reconstruction," she refused to participate in the fabrication. She reasserted that she could not, consistent with her oath and the penalty of perjury, attest to terms she did not agree to and could not recall. Attorney Vesely immediately intervened, highlighting the inherent illegality of Defendant Judge Keberlein's demand:

71. "Both parties in the record of this case have stated they don't recall [the terms of the lost MSA], including Mr. Fitzgibbon... They both said that they didn't recall, [FCC Bermingham] ordered them to reconfigure it... It's an impossible task to try to reconstruct what happened... I think, on the credibility of both parties, they said they don't recall. And that's part of the record in this case from both parties. And, you know, I don't know how we can, at this juncture, force terms on them when they both have said earlier they don't recall... How do you reconstruct it and say with any degree of certainty these are the terms, but yet I didn't recall them

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

earlier without perjuring yourself?"

72.    Defendant Judge Keberlein dismissed these foundational objections, declaring, "If they can't remember, I'm going to take the pieces that I have as a jumping-off point... Is it a fair, accurate representation of your agreement? Yes. How can they say it's not?" He further asserted that he was "not forcing terms on them."

73.    He then stated, "I'm going to take [the draft MSAs] in back and I'm going to look at them both to make my credibility determinations... and then I'm going to create what is the MSA that I think they agreed to [on January 28, 2022, that was lost by the court]." He then recessed and retreated to chambers to do exactly that.

74.    When Defendant Judge Keberlein returned and began "reconstructing" the lost MSA using Adam's perjured submission as his template, he did so without:

   a.  Confronting the most glaring contradictions embedded in Adam's testimony: He never asked how Adam—after eight consecutive months of insisting he could not recall the terms of the lost MSA—now claimed detailed, near-perfect memory.

   b.  Questioning Adam about his eight months of openly defying FCC Bermingham's April 26, 2022, order to co-create a new MSA; nor did he acknowledge the extensive financial, custodial, and emotional harm Adam inflicted on Elizabeth and their child during that period of noncompliance.

   c.  Addressing Adam's sudden departure from his previous fixation on resurrecting the nullified original MSA and the "missing" pages. Having built nearly a year of obstruction around those pages, Adam abandoned that narrative the moment it became strategically beneficial to fabricate a new one under oath.

   d.  Reconciling Adam's January 6, 2023, asset valuations with the parties' Financial Disclosure Statements or with Adam's own December 27 and

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

29, 2022, filings, which contained additional irreconcilable inconsistencies. Instead, he accepted Adam's newly constructed narrative—treating each inconsistency, omission, and impossibility as though they simply did not exist—and allowed those falsehoods to serve as the foundation for a "reconstructed" MSA that the record had already established could not be recreated.

e. Reconciling Adam's perjured statements with Elizabeth's "Exhibit G"—a contemporaneous, line-item asset schedule that disproved Adam's "reconstructed" figures and was repeatedly referenced by Elizabeth and Attorney Vesely. Without alignment with Exhibit G, no equitable MSA could be crafted at all—let alone "reconstructed." Yet Defendant Judge Keberlein never reviewed it. Throughout the hearing, the clerk offered multiple times to bring the exhibit before the court:

Defendant Missy Woldt: "Do you want me to pull and mark Exhibit G, Judge?"

Defendant Judge Keberlein: (No answer)

--

Defendant Missy Woldt: "We have filed exhibits, but until they're marked and offered, they're just sitting in a queue that you cannot see."

Defendant Judge Keberlein: "That's okay. I don't need to right now."

--

Defendant Missy Woldt: "And then I'm going to just reject all of these exhibits since none of them were offered or received, correct?"

Defendant Judge Keberlein: "Okay."

75. In that single word—"Okay"—Defendant Judge Keberlein ensured that the one document capable of disproving Adam's fabricated MSA, exposing the financial

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

inaccuracies, restoring procedural fairness, and establishing Elizabeth's credibility would remain unreviewed and effectively erased from consideration.

76. Defendant Judge Keberlein's "reconstruction," built entirely upon Adam's untested, inconsistent, and self-serving assertions, culminated in a credibility finding that defied the record. He announced, "Adam noted that there was a change [between E-Trade and Voya]… weighing the credibility of the witnesses… I'm going to eliminate 'E-Trade' and add 'half of the Voya account.'" In elevating Adam's contradictory claim over all documentary evidence—and over Elizabeth's testimony, which had remained consistent since February 7, 2022—Defendant Judge Keberlein inverted the very concept of credibility. The only witness whose account had shifted repeatedly and strategically became the "reliable" one, while the only witness whose testimony never changed was sidelined. Defendant Judge Keberlein grounded an MSA not in law, but in the manufactured narrative of the least credible participant in the room.

77. With Adam's perjured testimony as his foundation, Defendant Judge Keberlein declared the MSA "reconstructed." He did so despite his own admission on the record—repeated since his introduction to the case on November 16, 2022— that he had never actually seen the document he now claimed to have successfully reproduced. To finalize this "reconstructed" proposal, he engaged in a series of coordinated legal impossibilities:

    a. The Counterfeit Incorporation: He ministerially adopted Adam's unverified, self-serving draft as an official MSA, incorporating a known fabrication into a final Judgment of Divorce.

    b. The Retroactive Fiction: He backdated the 2023 "divorce" judgment by nearly a year to the defunct February 7, 2022, hearing. This created a temporal impossibility where a document "invented" in 2023 was treated as the basis for a hearing that occurred in 2022.

    c. The False Certification: He certified that FCC Bermingham—who had

Case 1:26-cv-00023-BBC   Filed 01/06/26   Page 26 of 49   Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

retired and surrendered his law license on June 10, 2022—had reviewed and approved this January 6, 2023, document for equity and therefore approved the parties' divorce on February 7, 2022. This was a facially fraudulent certification, as FCC Bermingham possessed no judicial authority in 2023 to approve a document that did not exist during his 2022 tenure.

78. The document itself announced its illegitimacy on its face. Appropriately titled a "Martial [sic] Settlement Agreement," it bore no signatures and memorialized no meeting of the minds. Despite its opening claim that "both parties agree," the document remained a one-sided draft, devoid of the statutory requirements for a valid stipulation under Wis. Stat. § 767.34. And at its end, where the law requires the voluntary marks of the parties—Defendant Judge Keberlein omitted the parties' signatures and instead inserted a self-authored disclaimer: "As ordered by the Court to reconstruct the Marital Settlement Agreement that was lost after filing with the Clerk of Courts. Hearing held on January 6, 2023" (Record #127).

79. The January 6, 2023, hearing concluded with a move of staggering irony. Attorney Vesely raised Elizabeth's outstanding Motion for Declaratory Relief (pursuant to § 806.07), which sought a formal acknowledgment that the February 7, 2022, "divorce" was void and unenforceable. Elizabeth had filed this motion as a protective shield against the exploitation of a non-existent judgment. However, instead of adjudicating the motion to secure her protection, Defendant Judge Keberlein exploited the filing as a jurisdictional pretext. In a perversion of judicial function, the very instrument Elizabeth used to challenge the invalid February 7, 2022, proceeding in the absence of FCC Bermingham became the very vehicle through which Defendant Judge Keberlein fabricated a fraudulent MSA, inflicting the exact harm the motion was designed to prevent.

80. Defendant Judge Keberlein concluded that Elizabeth's motion was the

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

"purpose of the hearing today... I'm attempting, through contract law, to reconstruct what the parties agreed to. I think that given the very unique, exceptional, in that I've never heard of it happening before, MSA being lost by the family court commissioner/clerk of courts, that there had to be some type of extraordinary step taken. I anticipate there's more litigation coming out of this case... I think that there's a need for finality to whatever the agreement was because I still firmly believe and hold true that there was an agreement, a meeting of the minds, a contractual agreement between parties. So the only question is not if there's an agreement, but what was the memorialization of that agreement, and so that is what I accomplished today... So today, we have a starting point to what I assume is probably going to be more litigation."

81. Consequently, the January 6, 2023, hearing was a procedural nullity conducted without any statutory basis. Rather than adjudicating a dispute within the bounds of law, Defendant Judge Keberlein engaged in an extrajudicial "reconstruction" of a non-existent record —effectively presiding over the legal impossibility of a contested uncontested divorce. This maneuver was not a judicial act, but an administrative laundering of the State's prior failures, designed to retroactively bridge a 333-day jurisdictional vacuum.

82. This administrative laundering culminated on January 12, 2023, through the coordinated ministerial actions of the Clerk's office. Defendant Tara Berry, acting as the Clerk of Courts, formally entered the counterfeit MSA and the backdated Divorce Judgment into the official record as Record #127.

83. Defendant Tara Berry's participation was not a passive clerical function. Having worked directly with the court's officers, she knew—or should have known— that the documents she was entering were a legal impossibility. Specifically, Defendant Tara Berry was aware that FCC Bermingham had retired and surrendered his license six months prior, on June 10, 2022.

84. Despite this knowledge, she processed Record #127, which falsely claimed to

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

be an instrument approved and finalized by the retired official who was legally *functus officio*. By entering this fabrication into the CCAP system, Defendant Tara Berry provided the final veneer of legality to the conspiracy. This act was the essential final step in a scheme to paper over a 333-day jurisdictional vacuum with a document that was a factual and legal fiction.

## VII. RESERVATION OF RIGHTS

85. Plaintiff hereby explicitly reserves her right to bring separate and subsequent causes of action against the Defendants, and/or additional parties not yet named, arising out of the systemic failures, enforcement actions, and consequences of the court's loss of the parties' final, intended Marital Settlement Agreement (MSA), the defunct February 7, 2022, judgment, and the subsequent "extra-judicial" January 6, 2023, fabrication.

    a. <u>Scope of Current Action</u>: This Complaint is targeted specifically at the unconstitutional manufacture, backdating, and certification of a counterfeit MSA on January 6, 2023. This action seeks to redress the fraud upon the court used to paper over catastrophic administrative failures.

    b. <u>Reservation of Claims Regarding Appellate and Judicial Affirmation</u>: Plaintiff further reserves the right to bring separate and subsequent actions against additional judicial officers or entities arising from the systemic failure to correct the January 6, 2023, fraud before and during the appellate process.

        i. <u>Affirmation and Concealment of Fraud</u>: Plaintiff identifies, but does not yet litigate, the distinct constitutional injuries caused by other judicial and quasi-judicial officers—including but not limited to Family Court Commissioners (FCCs), Guardians ad

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

Litem (GALs), and the Appellate Court. These actors facilitated the laundering of a counterfeit record through a series of administrative ratifications and the subsequent strategic unpublishing of the appellate decision. By failing to report the extrinsic fraud and instead shielding the manufactured record from public citation—effectively incorporating the extrinsic fraud into the state's official administrative history to insulate the lower court from federal scrutiny—these officers provided the administrative smoke screen necessary to sustain a known fraud, thereby enabling the ongoing deprivation of Plaintiff's legal status, property, and liberty interests.

ii. Enabling Enforcement: Plaintiff maintains that the appellate court's failure to vacate a *void ab initio* record provided the necessary *color of law* and administrative cover for the subsequent executive enforcement actions—including the unlawful May 9, 2025, Receiver appointment. By refusing to strike a record it knew to be a procedural nullity, the appellate court became the engine of the subsequent trespasses against Plaintiff's property, all of which will be separately and subsequently addressed.

c. Reservation of Custodial and Parental Rights: Plaintiff explicitly reserves the right to seek separate redress for the catastrophic custodial harms and the ongoing deprivation of her fundamental parental liberty interests. While the "Original Sin" of the lost MSA created the initial legal vacuum, this vacuum was subsequently weaponized by state and quasi-judicial actors to systematically dismantle the mother-child relationship. This weaponized vacuum was used to obstruct court-ordered reunification, interfere with Plaintiff's

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

constitutionally protected right to direct the education and religious upbringing of her child, and inflict a deep-seated relational injury that is distinct from the administrative fraud litigated in this Complaint. By litigating the fabrication of the judicial record herein, Plaintiff does not waive or satisfy any claims regarding the resulting destruction of her parental rights, which shall be the subject of a separate and subsequent action.

d. <u>Reservation of Claims against Enforcement Trespassers</u>: Pursuant to the Trespasser Doctrine (*Elliott v. Peirsol*, 26 U.S. 328 (1828)), officials who execute a judgment that is a legal nullity are stripped of immunity. Plaintiff reserves all claims against the Winnebago County Child Support Agency and their agents, the Receiver, and associated financial institutions for the administrative negligence of enforcing a facially defective, unsigned, and backdated order.

e. <u>No Waiver or Merger</u>: The inclusion of these background facts is intended solely to establish malice, operative intent, and a continuous conspiratorial purpose. Reference to these acts is purely evidentiary and does not constitute a waiver, merger, or satisfaction of these claims within the current litigation.

## VIII.  CLAIM FOR RELIEF

**A.**  **Count I: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment**

86.  <u>Defendant</u>: Bryan Keberlein, in his Individual Capacity

87.  <u>Nature of the Violation</u>:

a. <u>Issue</u>: Whether Defendant Judge Keberlein utilized an administrative capacity to manufacture a counterfeit record for the purpose of extinguishing Winnebago County liability for a 333-day jurisdictional

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

gap, thereby bypassing constitutional safeguards and falsifying Plaintiff's legal status.

b. Rule: The Fourteenth Amendment prohibits the fabrication of records to deprive a person of due process (*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000)). Absolute immunity is forfeited when a judge acts in the clear absence of all jurisdiction (*Stump v. Sparkman*, 435 U.S. 349 (1978)) or performs administrative/executive acts to manage a court's liability or engage in field enforcement (*Forrester v. White*, 484 U.S. 219 (1988)). Furthermore, the Fourteenth Amendment protects the fundamental right to marry (*Loving v. Virginia*, 388 U.S. 1 (1967)), which includes the right to a lawful dissolution of a previous marriage so that one may exercise that liberty.

c. Analysis: The Jurisdictional Cover-Up: Defendant Judge Keberlein committed a structural violation of due process by prioritizing the financial and legal protection of Winnebago County over Plaintiff's constitutional rights:

   i. The 333-Day Liability Gap: Between February 2022 and January 2023, a jurisdictional vacuum existed due to the County's negligence in losing the original MSA. If Defendant Judge Keberlein had entered a lawful order on January 6, 2023, the County would have remained liable for the severe damages caused during that gap.

   ii. Administrative Alchemy (The "Fix"): To "cure" the County's liability, Defendant manufactured a counterfeit MSA. He used a retired official (FCC Bermingham) as a jurisdictional ghost to anchor the document in the past, performing a ministerial "solution" to a clerical failure.

   iii. Subsequent Transition to Executive Enforcer: Per *Gibson v.*

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

*Goldston*, 85 F.4th 420 (6th Cir. 2023), Defendant transitioned from adjudicator to executive enforcer. When Plaintiff refused to validate the fraud, Defendant utilized carceral threats and the non-judicial seizure of assets via a Receiver to coerce submission to the counterfeit record.

    iv. <u>The Immobilization of Legal Status</u>: By manufacturing a void decree, Defendant Judge Keberlein has effectively frozen Plaintiff's legal identity. Because the record is a jurisdictional nullity, Plaintiff remains legally tethered to her marriage without a lawful means of exit. Any subsequent marriage by Plaintiff would be legally precarious or potentially bigamous. Defendant Judge Keberlein has thus placed an unconstitutional prior restraint on Plaintiff's fundamental right to marry by providing a counterfeit exit that prevents a lawful dissolution.

  d. <u>Conclusion</u>: Defendant Judge Keberlein performed a non-judicial act of risk management to manufacture a "finality" the law did not allow. The resulting record is *void ab initio*.

88. <u>Overcoming Immunity</u>:

  a. <u>The "Two Hats" Conflict (Judge as Risk Manager)</u>: Defendant Judge Keberlein forfeited immunity by assuming the role of a County Risk Manager. His primary objective was to "fill the gap" of clerical negligence to protect the entity from liability. Under *Forrester v. White*, 484 U.S. 219 (1988), managing a court's liability is an administrative function, not a judicial one.

  b. <u>Clear Absence of Jurisdiction</u>: No statute permits a judge to use a retired official's name as a proxy to backdate a record for the purpose of "curing" a State-created jurisdictional defect.

  c. <u>The "Party" Interest</u>: Because the State is a silent party to every

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

divorce action, Defendant Judge Keberlein's act of "fixing" the record to save the County from 333 days of exposure created a fatal adjudicator/adversary conflict of interest, stripping him of his neutral role.

d. The "Executive" Exception: Utilizing threats of jail and receiverships to enforce a document the judge himself produced is an executive enforcement action, not protected by absolute immunity.

89. Injury and Damages: Plaintiff seeks compensatory and punitive damages for the destruction of her legal status and the intentional erasure of her right to seek redress for the 333-day gap of state negligence.

## B. Count II: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment

90. Defendant: Bryan Keberlein, in his Official Capacity (representing Winnebago County/The State of Wisconsin)

91. Nature of the Violation:

a. Issue: Whether Defendant Judge Keberlein, in his official capacity, created and backdated a void judicial record to shield the State from liability, and whether the "poisoned well" of the local judiciary necessitates a permanent jurisdictional bar.

b. Rule: Under *Ex parte Young*, state officials may be sued for prospective injunctive relief to end an ongoing constitutional deprivation. Federal courts possess the power to enjoin state proceedings where the state forum is systemically biased or fraudulent (*Mitchum v. Foster*, 407 U.S. 225 (1972)). Furthermore, the *Rooker-Feldman* doctrine does not bar federal jurisdiction where the state court judgment was obtained through extrinsic fraud and a well-pleaded complaint of a fabricated record (*Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007)).

c. Analysis:

i. The Ongoing Shield: Defendant Judge Keberlein continues to

Case 1:26-cv-00023-BBC    Filed 01/06/26    Page 34 of 49    Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

maintain Record #127 as a legal fiction. This blocks Plaintiff from seeking damages for the 333-day gap and provides *color of law* for predatory enforcement by third-party agencies.

  ii. <u>The Forum of Entrapment</u>: Because the fraud involved a multi-actor conspiracy (judges, clerks, and staff) to bridge the 333-day gap, the Winnebago County judiciary has a structural incentive to maintain the fiction. This closed loop of fraud renders a fair trial in that venue a constitutional impossibility.

  iii. <u>Authorize Predatory Enforcement</u>: Provide the necessary *color of law* for third-party agencies (Receiver, Child Support Agency, financial institutions, etc.) to seize assets based on a fabrication.

d. <u>Conclusion</u>: The fraud is active and the forum is compromised. Prospective relief must include a permanent severance from the Winnebago County Circuit Court.

92. <u>Overcoming Immunity (*Ex Parte Young*)</u>: The Eleventh Amendment does not bar this suit because the Plaintiff seeks prospective declaratory and injunctive relief to end a continuous violation of federal law. Because Record #127 is a continuous fraud currently being used to seize encumbered assets and enforce a void status, the violation is ongoing.

93. <u>Injury and Requested Relief</u>: The entity's systemic failures have inflicted a contagion of fraud upon Plaintiff. By maintaining Record #127 as an active judicial document, the Clerk's Office has created a fraudulent public foundation that has:

a. <u>Triggered Financial Destabilization</u>: Created the legal foundation for the predatory seizure of encumbered assets.

b. <u>Infected Collateral Systems</u>: Corrupted Plaintiff's status with the Child Support Agency, tax authorities, title companies, and financial institutions.

c. <u>Destroyed Procedural Integrity</u>: Permanently severed the legal chain of

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

custody, leaving Plaintiff with no truthful record to defend her rights.

d. <u>Destruction of Marital Capacity</u>: The State's continued maintenance of a fraudulent record has stripped Plaintiff of her marital capacity. By housing a fiction that purports to terminate a marriage through fraud rather than law, the State has created a permanent barrier to Plaintiff's future exercise of her fundamental right to enter into a lawful marriage elsewhere. This is an ongoing, daily deprivation of liberty that can only be cured by a Federal declaration of the record's nullity.

94. <u>Requested Relief (Coordinated with Judge's Clerk of Court's Capacity Ask)</u>: To remedy the continuous violation of federal law, Plaintiff seeks Prospective Mandatory Injunctive Relief in the form of:

a. <u>Declaratory Relief</u>: A Judgment declaring that the Defendant's custom of administrative circumvention and the resulting creation of Record #127 are unconstitutional and that the record is *void ab initio*.

b. <u>Preliminary Injunction</u>: An immediate order staying all state-sanctioned enforcement of Record #127 pending a final resolution on the merits.

c. <u>Permanent Injunction</u>: Upon final judgment, a permanent injunction requiring:

    i. A permanent injunction requiring the Defendant to mark Record #127 as VOID and UNENFORCEABLE in all official state databases.

    ii. Mandatory corrective notice to all downstream enforcement agencies (Child Support, Receiver, tax authorities, financial institutions etc.) informing them that the record is a nullity and all associated enforcement must cease permanently.

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

## C. Count III: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment

95. <u>Defendant</u>: Tara Berry (Clerk of Courts), in her Individual Capacity

96. <u>Nature of the Violation</u>:

    a. <u>Issue</u>: Whether a Clerk of Court violates the Fourteenth Amendment by (1) failing a ministerial duty to preserve an original judicial record and (2) subsequently laundering a replacement she knows is a legal impossibility.

    b. <u>Rule</u>: Clerks of Court owe a ministerial duty to the public to ensure the physical integrity and truthful preservation of the court record. The Fourteenth Amendment protects against the deprivation of property and procedural rights caused by the loss or destruction of essential legal records by state officials, as well as the subsequent fabrication of replacement evidence (*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000)).

    c. <u>Analysis</u>: Defendant Tara Berry's misconduct is the alpha and omega of the fraud:

        i. <u>The Initial Breach (The Loss)</u>: Defendant Tara Berry failed her primary ministerial duty by losing the parties' final, intended MSA. This was not a discretionary act; it was a failure to maintain the legal chain of custody for the most vital document in the litigation.

        ii. <u>The Affirmative Fraud (The Laundering)</u>: To cover the administrative failure of the lost file, Defendant Tara Berry affirmatively entered Record #127 into the CCAP system. She did so with actual or constructive knowledge that the document was a legal impossibility—specifically that it purported to be "approved" by FCC Bermingham six months after his retirement had rendered him *functus officio*.

    d. <u>Conclusion</u>: Defendant Tara Berry's loss of the parties' final, intended

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

MSA and her subsequent entry of the fabrication provided the essential machinery for the state-sanctioned harm. Her actions were the proximate cause of the destruction of Plaintiff's legal status.

97. <u>Overcoming Immunity</u>: There is no qualified immunity for a Clerk's failure to perform a ministerial act. The duty to physically preserve a filed document and the duty to refrain from filing known counterfeits are absolute clerical obligations. It is a clearly established constitutional principle that a state official cannot "fix" the loss of a citizen's property (the original record) by substituting it with a backdated fiction. No reasonable Clerk could believe that the maintenance of records includes the affirmative entry of a known fabrication.

98. <u>Injury and Damages</u>: Plaintiff seeks compensatory and punitive damages for the permanent destruction of the legal chain of custody, the loss of the authentic MSA (her property), and the psychological distress of being subjected to a laundered public record.

## D. Count IV: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment

99. <u>Defendant</u>: Tara Berry (Clerk of Courts), in her Official Capacity)

100. <u>Nature of the Violation</u>:

    a. <u>Issue</u>: Whether the Clerk's Office maintained a systemically deficient custom of record-keeping and processing that served as the moving force behind a total breakdown of due process.

    b. <u>Rule</u>: Under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a local government entity is liable when its custom or practice is so deficient that it constitutes a deliberate indifference to the constitutional rights of the people it serves.

    c. <u>Analysis</u>: The "Triad of Failures"—mailing a different couple's MSA, losing the Plaintiff's final, intended MSA, and scanning a defective fragment of the nullified original MSA—demonstrates a systemic breakdown in the ministerial duty of record integrity. The Clerk's own

Case 1:26-cv-00023-BBC   Filed 01/06/26   Page 38 of 49   Document 1

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

admission that these failures necessitated a systemic overhaul proves that the moving force was the entity's deficient custom, not an isolated human error. This chaos created the legal vacuum that allowed the subsequent fabrication of Record #127.

   d. Conclusion: The entity's failure to maintain a reliable record-keeping system was the moving force that directly enabled the deprivation of Plaintiff's legal status, property, and her right to a truthful judicial record.

101. Overcoming Immunity: Under the *Ex parte Young Doctrine*, sovereign immunity does not bar federal courts from granting prospective injunctive relief to stop an ongoing constitutional violation. Because the Clerk's Office is currently maintaining and distributing a fraudulent public record (#127), the Court has the authority to order the entity to correct that record and halt its enforcement.

102. Injury and Requested Relief: The entity's systemic failures have inflicted a contagion of fraud upon Plaintiff. By maintaining Record #127 as an active judicial document, the Clerk's Office has created a fraudulent public foundation that has:

   a. Triggered Financial Destabilization: Created the legal foundation for the predatory seizure of encumbered assets.

   b. Infected Collateral Systems: Corrupted Plaintiff's status with the Child Support Agency, tax authorities, title companies, and financial institutions.

   c. Destroyed Procedural Integrity: Permanently severed the legal chain of custody, leaving Plaintiff with no truthful record to defend her rights, effectively immunizing Winnebago County from liability for its 333-day period of negligence at the Plaintiff's expense.

103. Requested Relief (Coordinated with Judge's Official Capacity Ask): To remedy the continuous violation of federal law, Plaintiff seeks Prospective Mandatory Injunctive Relief in the form of:

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

a. <u>Declaratory Relief</u>: A Judgment declaring that the Defendant's custom of administrative circumvention and the resulting creation of Record #127 are unconstitutional and that the record is *void ab initio*.

b. <u>Preliminary Injunction</u>: An immediate order staying all state-sanctioned enforcement of Record #127 pending a final resolution on the merits.

c. <u>Permanent Injunction</u>: Upon final judgment, a permanent injunction requiring:

    i. The expungement of Record #127 from all official state databases.

    ii. Mandatory corrective notice to all downstream enforcement agencies (Child Support, Receiver, tax authorities, financial institutions etc.) informing them that the record is a nullity and all associated enforcement must cease permanently.

**E. Count V: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment**

104. <u>Defendant</u>: Adam Fitzgibbon, in his Individual Capacity

105. <u>Nature of the Violation</u>:

a. <u>Issue</u>: Whether a private citizen acts under *color of law* by willfully providing a fabricated instrument to a judicial officer to fill an administrative vacuum and trigger state-sanctioned enforcement.

b. <u>Rule</u>: Private parties are liable under § 1983 when they are willful participants in joint action with the State or its agents (*Dennis v. Sparks*, 449 U.S. 24 (1980)). This joint participation test is met when the State official and the private party act in concert to deprive a citizen of constitutional rights, or when the state provides the machinery of enforcement for a private party's fraudulent scheme (*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982)).

c. <u>Analysis</u>: Defendant Adam provided a perjured "reconstruction" of a

lost MSA with the specific knowledge that it would serve as the evidentiary basis for a backdated judicial decree. By doing so, Adam intentionally infused the State's administrative vacuum with the materials of fraud. Once Defendant Judge Keberlein laundered this document into an official record, Adam became a joint participant in the state's machinery, using the resulting void decree to misrepresent he parties' legal status and exert state-sanctioned duress (carceral threats and asset seizures) that would have been legally impossible without the State's active cooperation.

    d. <u>Conclusion</u>: Adam's affirmative act of providing the fabricated tool was the proximate and "but-for" cause of the deprivation. Under the joint participation theory, Adam's conduct is fairly attributable to the State.

106. <u>Overcoming Immunity</u>: Under the rule in *Dennis v. Sparks*, 449 U.S. 24 (1980), private conspirators do not enjoy the derivative immunity of the judicial officers with whom they act in concert. Adam remains personally liable for the constitutional injury even if state officials are shielded by immunity.

107. <u>Injury and Damages</u>: Plaintiff seeks compensatory and punitive damages for the deprivation of her right to a truthful judicial process and the immediate corruption of her legal status. The injury is the current existence of the fraudulent record which functions as a standing instrument of coercion.

**F.    Count VI: Violation of 42 U.S.C. § 1985 – Conspiracy, Obstruct Justice**

108. <u>Defendants</u>: Adam Fitzgibbon, Tara Berry, Missy Woldt, Judge Bryan Keberlein, Stephanie Koenigs, each in their Individual Capacities

109. <u>Nature of the Violation</u>:

    a. <u>Issue</u>: Whether the Defendants conspired to defeat the due course of justice by targeting a truthful litigant with a manufactured record to bypass statutory requirements.

    b. <u>Rule</u>: 42 U.S.C. § 1985(2) prohibits conspiracies intended to impede,

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

hinder, obstruct, or defeat the due course of justice in any State or Territory with the intent to deny any citizen the equal protection of the laws.

    c. <u>Analysis</u>: The Quadripartite Overt Act: The conspiracy was driven by an animus toward Plaintiff's refusal to participate in the court's extra-statutory methods. To achieve a result the law did not allow, the Defendants coordinated a four-part overt act:

        i. <u>The Supply (Adam)</u>: Providing the perjured "reconstruction" to serve as the fraudulent foundation.

        ii. <u>The Forced Processing (Woldt)</u>: Utilizing administrative influence to push the defective process and instrument through the system.

        iii. <u>The Manufacturing (Keberlein)</u>: Performing the non-judicial act of "Record Producer" by backdating the decree to bridge a jurisdictional vacuum.

        iv. <u>The Validation (Koenigs)</u>: Knowingly certifying a transcript that presented a temporal impossibility as a historical fact, thereby providing the "official" seal required to finalize the conspiracy's paper trail.

        v. <u>The Authentication (Berry)</u>: Fulfilling the laundering process by docketing the known legal impossibility into the public record.

    d. <u>Conclusion</u>: This conspiracy was a conscience-shocking attempt to manufacture finality where no meeting of the minds existed, effectively nullifying Plaintiff's right to a truthful adjudication.

110. <u>Overcoming Immunity</u>: Conspiracy to commit extrinsic fraud—specifically the manufacture of a counterfeit record to bypass jurisdictional limits—is an agreement that falls outside the judicial or prosecutorial function. Under *Dennis v. Sparks*, 449 U.S. 24 (1980), judicial immunity does not shield a judge from a § 1985

Case 1:26-cv-00023-BBC    Filed 01/06/26    Page 42 of 49    Document 1
Original Complaint for January 6-12, 2023 Civil Rights Deprivation

conspiracy claim, nor does it shield the private or administrative co-conspirators.

111. <u>Injury and Damages</u>: Plaintiff seeks compensatory and punitive damages for the "Inverse Barber (Barber v. Barber, 62 U.S. 582 (1858))" injury: the forced imposition of a decree where no legal agreement existed. The injury is the current, ongoing corruption of Plaintiff's legal identity and the psychological distress of being targeted by a state-coordinated fraud.

## G.     Count VII: Violation of 42 U.S.C. § 1983 – Integral Participation

112. <u>Defendant</u>: Missy Woldt (Judicial Assistant), in her Individual Capacity

113. <u>Nature of the Violation</u>

 a. <u>Issue</u>: Whether a judicial assistant is liable under § 1983 for providing the necessary ministerial links to facilitate the fabrication of a court record and the suppression of exculpatory evidence.

 b. <u>Rule</u>: Liability under § 1983 extends to any official who is an integral participant in a constitutional violation, even if they do not personally execute the final act (*Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996)).

 c. <u>Analysis</u>: Defendant Missy Woldt provided the essential administrative links to ensure the fabrication survived the hearing. As documented by the record and Exhibit G, Defendant Missy Woldt's participation was not passive, but a conscious choice to facilitate a known fraud:

  i. <u>Administrative Coercion</u>: She issued an all-caps demand for the January 6, 2023, hearing, rejecting the parties' mutual request for mediation to ensure Defendant Judge Keberlein's "clerical solution" (the fabrication) was reached without outside interference.

  ii. <u>Actual Knowledge of Exculpatory Evidence</u>: During the January 6 hearing, Defendant Missy Woldt demonstrated actual knowledge of the truth by repeatedly offering to present Exhibit

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

G (the evidence proving the invalidity of the manufactured MSA) to Defendant Judge Keberlein.

    iii. <u>The Ministerial Abandonment</u>: Despite her clear understanding that Exhibit G was necessary to the integrity of the proceeding, Defendant Missy Woldt abandoned her ministerial duty to the record the moment Defendant Judge Keberlein signaled his rejection of the truth. Instead of preserving the exhibit as an "offered" part of the judicial file, she affirmatively cooperated in its exclusion.

  d. <u>Conclusion</u>: Defendant Missy Woldt's actions were the essential gears in the administrative machinery used to manufacture a record and hide the state's clerical negligence.

114. <u>Overcoming Immunity</u>: A judicial assistant's duty to accurately process evidence and manage the court's queue is ministerial, not discretionary. There is no qualified immunity for an official who knowingly suppresses an evidence queue to favor a counterfeit instrument. The right to a truthful court record and the right to present evidence are clearly established, defeating any claim of immunity.

115. <u>Injury and Damages</u>: Plaintiff seeks compensatory and punitive damages for the destruction of her procedural rights and the emotional distress caused by Defendant Missy Woldt's active participation in the laundering of a fraudulent legal status

## H.    Count VIII: Violation of 42 U.S.C. § 1983 – Integral Participation

116. <u>Defendant</u>: Stephanie Koenigs (Court Reporter), in her Individual Capacity

117. <u>Nature of the Violation</u>:

  a. <u>Issue</u>: Whether a court reporter is liable for certifying a transcript that she knows contains a legal impossibility, thereby providing the official validation required for unconstitutional state enforcement.

  b. <u>Rule</u>: The certification of a court record is a ministerial act (*Antoine v.*

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

*Byers & Anderson, Inc.*, 508 U.S. 429 (1993).). An official who is an integral participant in a constitutional violation—by providing a necessary link in the chain of fabrication—is liable under § 1983 (*Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996)).

    c. <u>Analysis</u>: The Certification of the Fiction: Defendant Stephanie Koenigs served as the author of the official hearing. Because she was also the reporter present for the December 20, 2022, hearing, she possessed actual knowledge that no signed or valid MSA existed at that time. By subsequently certifying the January 6, 2023, hearing—a proceeding designed to backdate a 2023 creation to a 2022 date—she affirmatively validated a temporal fiction.

    d. <u>Conclusion</u>: Her certification was a necessary ministerial act that officialized the fraud, serving as the moving force behind the Plaintiff's loss of legal and financial status.

118. <u>Overcoming Immunity</u>: Court reporters have no immunity for ministerial acts performed with knowledge of their falsity. The duty to provide a truthful and accurate record is clearly established. No reasonable official in Defendant Stephanie Koenigs' position could believe that certifying a backdated, manufactured proceeding as a "lawful" historical record was constitutional. Furthermore, the Seventh Circuit has explicitly held that a court reporter who joins a systematic enterprise to manipulate a divorce record through fraud and fabrication is not shielded from § 1983 liability (*Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006)). Under the integral participation doctrine, her personal knowledge of the December 2022 "vacuum" strips away any claim of good faith.

119. <u>Injury and Damages</u>: Plaintiff seeks compensatory and punitive damages for the corruption of the judicial record and the resulting status injury. The injury is the officialization of the fraud, which converted a counterfeit document into a public "fact," enabling state-sanctioned duress and the imminent threat of asset seizure.

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

# IX. JURY DEMAND

120.  Pursuant to the Seventh Amendment and Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all triable issues of fact.

# X. PRAYER FOR RELIEF

121.  WHEREFORE, Plaintiff Elizabeth Fitzgibbon respectfully requests that this Court enter judgment in her favor and against all Defendants, providing the following relief:

## A. Declaratory and Injunctive Relief (Official Capacity)

122.  Against Defendant Judge Keberlein, in his Official Capacity, and Defendant Tara Berry, in her Official Capacity as Clerk of Court (Representing the Winnebago County Clerk's Office and Winnebago County):

   a. Declaratory Judgment: A formal declaration that the January 6, 2023, "Marital Settlement Agreement" (MSA) and the resulting Divorce Judgment (R.127) are *void ab initio* and a legal nullity, as they were manufactured through extrinsic fraud and in the clear absence of all jurisdiction.

   b. Declaration of Systemic Failure (*Monell*): A declaration that the Winnebago County Clerk of Court's administrative customs—specifically the systemic loss of original records, the misidentification of parties' files, and the entry of legal impossibilities—are constitutionally deficient and violated Plaintiff's Fourteenth Amendment rights.

   c. Preliminary and Permanent Injunction: An immediate and permanent order staying the enforcement of the void decree. This includes an order prohibiting the Clerk's Office from certifying or distributing Record #127 as a valid instrument to any third parties, including the

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

Child Support Agency or executive Receivers.

d. <u>Mandatory Injunction for Record Correction</u>: An order requiring the Clerk of Court to:

    i. Mark Record #127 and all associated entries as "VOID BY ORDER OF FEDERAL COURT" and "NULL AND *VOID AB INITIO*" within the CCAP electronic database so that it may no longer be relied upon by any state or private actor.

    ii. Formally vacate the backdated and fabricated entries of January 6, 2023, by entering a corrective docket notation that explicitly identifies those entries as fraudulent administrative productions rather than judicial acts.

    iii. Restore the official record to its true historical status as of the "Original Sin" of record loss (pre-February 7, 2022), effectively clearing the title to Plaintiff's property and identity by removing the cloud created by the State's administrative fiction.

e. <u>Permanent Jurisdictional Bar and Mandatory Transfer</u>: A permanent injunction prohibiting the Winnebago County Circuit Court from exercising further jurisdiction over the parties' marital dissolution, property division, or custodial matters. Plaintiff has demonstrated that the "well is poisoned" via a multi-actor conspiracy that includes the bench, the clerk's office, court staff, and other judicial officers who are not part of this Complaint. Consequently, any "reset" of the litigation in Winnebago County would subject the Plaintiff to an immediate and certain risk of further administrative retaliation and procedural entrapment.

f. <u>Order for Extraterritorial Adjudication</u>: An order mandating that the dissolution of the parties' marriage be adjudicated in a neutral, non-conflicted venue (e.g., Marinette County) or before a court-appointed

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

referee. This Court shall retain jurisdiction to ensure that the transition to a new forum is not obstructed by the Defendants or used by Defendant Adam Fitzgibbon to resurrect the fabricated terms of the void Record #127.

g. Restoration to Marital Status Quo Ante: An order declaring that the parties remain legally married due to the nullity of Record #127, thereby restoring Plaintiff to the status she held prior to the State's administrative fabrication. This relief is necessary to provide the Plaintiff a constitutionally valid starting point from which she may seek a lawful dissolution in a neutral venue, as the current fraudulent decree constitutes a permanent cloud on her legal capacity to ever enter into a future valid marriage.

**B.      Monetary Damages (Individual Capacity)**

123.    Against Defendants Judge Keberlein, Tara Berry, Adam Fitzgibbon, Missy Woldt, and Stephanie Koenigs, in their Individual Capacities, jointly and severally:

124.    Compensatory Damages: An award of compensatory damages in an amount to be proven at trial for all injuries sustained as a result of Defendants' unconstitutional conduct, including but not limited to:

a. Actual financial losses and the value of misappropriated marital assets seized under the color of a void judgment.

b. Costs and expenses incurred in the exhaustive attempt to rectify a fraudulent record through state and federal appellate channels.

c. Catastrophic emotional distress, humiliation, and the destruction of family reputation.

d. The distinct, independent injury of the deprivation of a truthful judicial record and the loss of access to a legitimate court of law. This injury was initiated by the clerical negligence and "Original Sin" of record destruction, sustained through a 333-day jurisdictional vacuum

Original Complaint for January 6-12, 2023 Civil Rights Deprivation

where Plaintiff was left without the protection of the law, and culminated in the administrative laundering of a counterfeit record to bridge that gap.

125. Punitive Damages: An award of punitive damages against each Defendant in their individual capacity—including Judge Keberlein, Tara Berry, Adam Fitzgibbon, Missy Woldt, and Stephanie Koenigs—to punish their willful, malicious, and conspiratorial conduct in the falsification of public records and the reckless subversion of the judicial process, and to deter such "conscience-shocking" administrative fraud in the future.

## C. Fees and Costs

126. Attorney's Fees and Costs: An award of all litigation costs, filing fees, and expert witness fees pursuant to 42 U.S.C. § 1988, and attorney's fees should Plaintiff retain counsel during the pendency of this action.

## D. Other Relief

127. General Relief: Any such other and further relief as this Court deems just, equitable, and proper, including any necessary orders to restore the Plaintiff to her *status quo ante* (the position she was in before the fraud) insofar as it relates to the January 6, 2023, fabrication.

Respectfully submitted, this 6th day of January, 2026.

By: _____

Elizabeth Anne Fitzgibbon, Pro Se      All Rights Reserved
308 Oak St.
Neenah, WI  54956
Phone: (920) 450-9277
Email: wied@thecaseofthemissingmsa.org

Original Complaint for January 6-12, 2023 Civil Rights Deprivation