**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ELIZABETH A. FITZGIBBON,**

**Plaintiff,**

**v.** **Case No. 26-CV-23**

**BRYAN KEBERLEIN,**
**MISSY WOLDT,**
**STEPHANIE KOENIGS,**
**TARA BERRY,**
**ADAM FITZGIBBON,**
**and JULIE MABRY,**

**Defendants.**

---

# DECISION AND ORDER

---

Elizabeth Fitzgibbon alleges that various state and local officials—a judge, clerk of court, judicial assistant, court reporter, and director of a child support agency—along with her former husband, violated her constitutional rights arising from the state court's loss, reconstruction, and subsequent enforcement of her marital settlement agreement (MSA). The defendants have moved to dismiss her amended complaint.

## 1. Background

Fitzgibbon's suit stems from the years-long divorce proceedings between her and defendant Adam Fitzgibbon. The following summary is constructed from Fitzgibbon's amended complaint, taken as true, and from state-court filings, of which

the court may take judicial notice. *See Ronald D. Fosnight & Paraklese Techs., LLC v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

The Fitzgibbons negotiated a written MSA, which they filed with the court on January 21, 2022. *Fitzgibbon v. Fitzgibbon*, 2024 WI App 37, ¶ 2, 412 Wis. 2d 835, 9 N.W.3d 302, 2024 Wisc. App. LEXIS 447. Elizabeth then had second thoughts, and the parties re-negotiated certain terms, resulting in handwritten notations on a copy of the original MSA. *Id.*, ¶ 3. The parties submitted the edited MSA to the court on January 28, 2022, but did not retain a copy for themselves. *Id.* ¶ 3. At the divorce hearing on February 7, 2022, the court referred to the MSA as having been approved by the court on "January 21, '22." *Id.* ¶ 4. Apparently no one noticed that this date reflected the original and not the edited MSA.

The court entered judgment, and a month later Adam noticed that the MSA he received from the court was not the edited version. *Id.* ¶ 5. At subsequent proceedings, the court was able to locate only the original unedited MSA and instructed the parties to re-create the edited version. *Id.* ¶ 5. When the parties failed to agree, the court held a hearing to determine what the parties' agreement had been. *Id.* ¶ 7. The court then entered judgment based on its findings as to what the parties' agreement to had been. *Id.*, ¶ 10. In re-creating the MSA in 2023, the court apparently started with the January 21, 2022, version, and therefore the re-created MSA contains that date and the signatures of the court officials that approved the document more than a year earlier. In other words, although it was re-created in

2023, the document date and signatures on the document indicate that it was created in 2022.

Fitzgibbon maintains that this "falsified judgment" (ECF No. 15 at 34) renders her divorce invalid. She appealed to the Wisconsin Court of Appeals, which affirmed Judge Keberlein's decision. *Fitzgibbon v. Fitzgibbon*, 2024 WI App 37, 412 Wis. 2d 835, 9 N.W.3d 302, 2024 Wisc. App. LEXIS 447. The Wisconsin Supreme Court denied a petition for review, and the United States Supreme Court denied certiorari. According to court records and the parties' briefing, however, another appeal may be pending in the Wisconsin Court of Appeals. *See* Wis. Ct. App. Case Nos. 2023AP001862; 2024AP001604; 2025AP000814; 2025AP001366 (consolidated).

Fitzgibbon's amended complaint alleges nine counts. The contours of the claims are not always clear. As to the first eight counts, she alleges they arise under 42 U.S.C. § 1983. Counts VI and VII allegedly relate to "Integral Participation." She presents the remaining § 1983 counts as arising under the Fourteenth Amendment. In Count IX she alleges a claim of conspiracy under 42 U.S.C. § 1985(2) and (3).

Fitzgibbon alleges that Judge Keberlein, in his personal capacity, violated the Fourteenth Amendment by creating, filing, and maintaining a falsified judgment. (ECF No. 15, ¶¶ 67-72.) She also alleges that similar actions by Judge Keberlein in his official capacity necessitate equitable relief voiding the state court's judgment. (ECF No. 15, ¶¶ 73-76.) Fitzgibbon alleges that Winnebago County Clerk of Court Tara Berry violated the Fourteenth Amendment by failing to maintain the edited MSA. (ECF No. 15, ¶¶ 77-81.) She also alleges that these actions amounted to a policy

or custom that renders the Winnebago County Clerk of Court liable under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). (ECF No. 15, ¶¶ 82-86.) In Count V, she names her former husband, Adam Fitzgibbon, and alleges that he violated the Fourteenth Amendment by acting with state officials. (ECF No. 15, ¶ ¶ 87-91.) Fitzgibbon also alleges that Judicial Assistant Missy Woldt (ECF No. 15, ¶¶ 92-96) and court reporter Stephanie Koenigs (ECF No. 15, ¶¶ 97-101) are liable for having participated in the actions underlying her claims. Fitzgibbon alleges that Julie Mabry, the Director of the Winnebago County Child Support Agency, violated the Fourteenth Amendment because she or a subordinate enforced the court's child support order. (ECF No. 15, ¶¶ 102-06.) Finally, Fitzgibbon alleges that all the defendants conspired to obstruct justice and deprive her of her rights. (ECF No. 15, ¶¶ 107-12.)

**2. Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint. *See Berger v. NCAA*, 843 F.3d 285, 290 (7th Cir. 2016). The court focuses on whether the plaintiff states a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

The court accepts the well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). But "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The pleading standard prescribed in Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"; it must include "further factual enhancement." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**3. Analysis**

As the defendants note in their motions to dismiss, there are many potential problems with Fitzgibbon's amended complaint. Under what has come to be referred to as the *Rooker-Feldman* doctrine, federal district courts do not have the authority to upset or undo, directly or indirectly, state court decisions. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). Federal courts cannot interfere with ongoing state court proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). Nor do federal courts have jurisdiction to resolve disputes involving domestic relations; such disputes are exclusively the domain of state courts. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Judges and other officials who exercise judicial authority are absolutely immune from suit for their judicial acts. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1015 (7th Cir. 2000). State officials sued in their official capacities enjoy sovereign immunity from suits. *Kentucky v. Graham*,

473 U.S. 159, 169 (1985). All government officials enjoy qualified immunity for liability for constitutional torts. *See Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (en banc). Issue preclusion bars re-litigation of matters decided in a prior action. *Gilldorn Sav. Asso. v. Commerce Sav. Asso.*, 804 F.2d 390, 392 (7th Cir. 1986). And to state a claim under 42 U.S.C. § 1983, a plaintiff must identify the specific person who allegedly injured her. *See Ghelf v. Town of Wheatland*, 132 F.4th 456, 472 (7th Cir. 2025).

Although these doctrines overlap, several independently apply to many of the plaintiff's claims. Set forth below the court attempts to take the simplest and most direct route through the plaintiff's amended complaint, addressing only the arguments and doctrines necessary to assess the plaintiff's claims.

### 3.1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine arises from the fact that the Supreme Court is the only federal court with authority to review the judgment of a state court. *Gilbank v. Wood Cty. Dep't of Hum. Servs.*, 111 F.4th 754, 765 (7th Cir. 2024). The doctrine is a "jurisdictional bar" meaning that if it applies, the court lacks the authority to consider the claim. *Id.* at 764. However, it is a narrow doctrine. *Id.* at 765. Courts must not conflate it with other principles that may likewise preclude a court from considering claims related to a state court decision such as res judicata, various abstention doctrines, or general principles of comity. *Id.* at 765-66. The doctrine applies if four elements are met:

> *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal

> proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment.

*Id.* at 766. (emphasis in original) (discussing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The Court of Appeals for the Seventh Circuit added a fifth element: "*Rooker-Feldman* does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts." *Id.* at 766.

### 3.2. Issue Preclusion

Adam Fitzgibbon (ECF Nos. 19 at 1; 20 at 1-2) refers to this action as being barred by the doctrine of res judicata, which is commonly referred to as claim preclusion.[1] The state defendants (Keberlein and Koenigs) join in this argument. (ECF No. 22 at 11.) Adam Fitzgibbon's argument (ECF No. 20 at 1-2), however, implicates both claim preclusion and the related doctrine of issue preclusion (historically referred to as collateral estoppel).

Issue preclusion overlaps with (or may sometimes be conflated with) the *Rooker-Feldman* doctrine in that it also bars federal courts from revisiting certain matters decided by state courts. *See Gash Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993); *Stewart v. JPMorgan Chase Bank, N.A.*, 716 F. Supp. 3d 677, 687-88 (N.D. Ill. 2024). Unlike *Rooker-Feldman*, which concerns state court judgments and injuries

[1] Res judicata has sometimes been used as an umbrella term to refer to both claim preclusion and issue preclusion, but it is most commonly regarded as synonymous with only claim preclusion. *See* 18 Moore's Federal Practice - Civil § 131.10.

arising therefrom, issue preclusion includes claims arising from facts or law determined in the state court proceedings. Unlike *Rooker-Feldman*, issue preclusion is not jurisdictional. *Gilbank*, 111 F.4th at 767.

Federal courts must afford a state court decision the same preclusive effect that it would receive in state court. *See* 28 U.S.C. § 1738; *Ghelf*, 132 F.4th at 471. "Wisconsin courts apply the following general rule: 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Ghelf*, 132 F.4th at 471 (quoting *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013)). However, issue preclusion is not limited to disputes between the same parties. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 550-51, 525 N.W.2d 723, 727 (1995); *Midwest Operating Eng'rs v. Cordova Dredge*, 147 F. Supp. 3d 724, 736 (N.D. Ill. 2015) (discussing *Allen v. McCurry*, 449 U.S. 90, 95 (1980)).

Application of issue preclusion is a two-step process. *Ghelf*, 132 F.4th at 471. First, the court determines "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.* (quoting *Dostal v. Strand*, 2023 WI 6, 405 Wis. 2d 572, 984 N.W.2d 382, 388). Second, "the court next decides 'whether the application of issue preclusion would be fundamentally fair.'" *Id.* (quoting *Dostal*, 2023 WI 6).

In assessing whether it would be fundamentally fair to apply issue preclusion the court considers:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained judicial review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Virnich v. Vorwald*, 664 F.3d 206, 216-17 (7th Cir. 2011) (quoting *Aldrich v. Labor & Indus. Review Comm'n*, 2011 WI App 94, ¶20, 334 Wis. 2d 495, 801 N.W.2d 457).

### 3.3. Claim Preclusion

"The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Kruckenberg v. Harvey*, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879. It bars subsequent litigation of not only matters that were actually litigated in a prior action but also matters that could have been litigated. *Id.* The doctrine has three elements:

> "(1) identity between the parties or their privies in the prior and present suits;
>
> (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and
>
> (3) identity of the causes of action in the two suits."

*Id.*, ¶21 (quoting *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 233-34, 601 N.W.2d 627, 637 (1999)). Whether there is an "identity of the causes of action" depends on a "transactional approach" where the court pragmatically assesses the relationship between the actions and, for example, whether the claims arise from "a common nucleus of operative facts". *Id.*, ¶¶ 25-26.

### 3.4. Application of *Rooker-Feldman*, Issue Preclusion, and Claim Preclusion

In Count I, Fitzgibbon alleges that Judge Keberlein violated her right to due process by fabricating a MSA, which led to a falsified judgment. (ECF No. 15, ¶ 67.) She alleges that Judge Keberlein's actions were not authorized by any state statute and therefore he lacks judicial immunity because he acted wholly without jurisdiction. She alleges that as a result, she remains legally married, the purported transfer of assets was invalid, and she is unable to remarry. (ECF No. 15, ¶ 71.)

In Count II, Fitzgibbon alleges that Judge Keberlein "in his Official Capacity" "created and ordered a false Judgment." (ECF No. 15, ¶¶ 73-74.) Whereas she seeks damages with respect to Count I, as to Count II she asks that the court void the state court judgment. (ECF No. 15, ¶ 76.)

Both claims are squarely foreclosed by *Rooker-Feldman*. Fitzgibbon is a "state court loser" in that she is the person against whom an unfavorable state court judgment was rendered. *See Kan. City S. Ry. v. Koeller*, 653 F.3d 496, 504 (7th Cir. 2011). The state court judgment is "final" in that it is an appealable decision. *See Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399-400 (7th Cir. 2023). Indeed, Fitzgibbon

appealed and the court of appeals affirmed the circuit court's decision. The judgment is final for purposes of *Rooker-Feldman* notwithstanding Fitzgibbon's pending collateral appeal.

Fitzgibbon alleges that the state court judgment caused her injuries. (ECF No. 15, ¶ 71.) In Count II she explicitly asks the court to review and reject the state court judgment. (ECF No. 15, ¶ 76.; *see also, e.g.*, ECF No. 25 at 4-5, 8.) And there is no way the court could grant Fitzgibbon relief under Count I without rejecting the state court judgment. Finally, Fitzgibbon had the opportunity to raise these issues in the state court proceedings. She was able to challenge the factual matter of the contents of the lost MSA and raise her claims that the court's reconstruction and the child support agency's actions violated due process. Fitzgibbon alleges that the state court judgment is void as a product of fraud, but this argument serves only to underscore that her action is really about undoing the judgment and *Roooker-Feldman* precludes this court from doing so.

In Counts I and II Fitzgibbon alleges that Judge Keberlein's actions were improper and the resulting judgment void. The means for correcting such alleged errors is the traditional appellate process. The appellate court affirmed Judge Keberlein's decision and the judgment. While framing it as a matter of due process, Fitzgibbon asks this court to review the state court judgment. The *Rooker-Feldman* doctrine prohibits this. Therefore, the court lacks jurisdiction over Count I and II.

*Rooker-Feldman* also deprives the court of jurisdiction to consider Fitzgibbon's allegation in Count VI that Judge Keberlein's judicial assistant Missy Woldt violated

due process (or did anything improper) in allegedly assisting in the creation of the judgment. In her claim against Woldt, Fitzgibbon again improperly seeks to undo the state court judgment.

For similar reasons the court lacks jurisdiction over Count VIII wherein Fitzgibbon alleges that child support officials violated the Fourteenth Amendment by collecting child support based on the terms of the judgment. Fitzgibbon alleges that the child support agency officials were complicit in enforcing an invalid judgment. This court, however, cannot grant relief that would undermine or otherwise suggest the invalidity of a state court judgment. Because this claim rests on the premise that the state court judgment was invalid, the court must dismiss it.

Fitzgibbon's claim against Adam Fitzgibbon (Count V) is not necessarily (or at least not completely) barred under *Rooker-Feldman*. The gist of her claim is that Adam Fitzgibbon misrepresented the terms of the lost edited MSA, thus leading to the re-created MSA. However, a claim that a person lied in a court proceeding does not present a plausible due process claim. *See Niedert v. Rieger*, 200 F.3d 522, 525 (7th Cir. 1999); *Curtis v. Bembenek*, 48 F.3d 281, 282 (7th Cir. 1995).

Additionally, issue preclusion bars Fitzgibbon's claim. Fitzgibbon could (and did) seek judicial review of the judgment. The court of appeals found that, consistent with the statute, all material issues had been resolved by the time of the final divorce hearing, and therefore it was proper for the court to grant the judgment of divorce. *Fitzgibbon*, 2024 WI App 37, ¶ 19. Once Fitzgibbon asked the court to amend or correct the judgment, it had discretion to use the procedure it employed to re-create

the lost MSA. *Id.*, ¶¶ 21-22. It noted that, notwithstanding her arguments that the re-created MSA was "counterfeit," she had not identified a single term that was allegedly different from lost MSA. *Id.*, ¶ 22.

The question is not one of law, and there were no intervening shifts of law. There are no significant differences in the quality or extensiveness of the proceedings in the two courts; Fitzgibbon could and did vigorously litigate the issue in the state court. The burdens of persuasion have not shifted.

Finally, no matters of public policy or individual circumstances render application of the doctrine fundamentally unfair. Application of issue preclusion is not fundamentally unfair simply because a party regards a state court decision as incorrect. The very reason for issue preclusion is to prevent successive courts from considering the correctness of a prior court's decision (outside of the established appellate process). Thus, the court must accept that Adam Fitzgibbon did not misrepresent the contents of the lost MSA and that the re-created MSA accurately reflects the terms of the lost MSA. As a result, issue preclusion bars Fitzgibbon from pursuing any claim inconsistent with these findings.

In addition, issue preclusion bars any claim, against any defendant, that Fitzgibbon was injured by the re-creation of the MSA insofar as she alleged damages as a result of the re-created MSA as containing terms that were detrimentally different than the lost edited MSA. Again, the court must accept as true the state court's finding that the re-created MSA reflects the terms of the lost edited MSA. Thus, insofar as Fitzgibbon in Counts III, IV, VI, VII, or IX alleges that a discrepancy

between the lost edited MSA and the re-created MSA resulted in damages, issue preclusion bars such a claim.

Claim preclusion, however, is inapplicable. It is relevant only with respect to Adam Fitzgibbon because he is the only defendant who was also a party in the divorce action. But claim preclusion has limited application vis-à-vis a divorce action. *Compare Stuart v. Stuart*, 143 Wis. 2d 347, 352, 421 N.W.2d 505, 507 (1988) (holding that claim preclusion does not bar suit against former spouse for torts committed during the marriage) *with Gardner v. Gardner*, 175 Wis. 2d 420, 434-35, 499 N.W.2d 266, 272 (Ct. App. 1993) (holding that former spouse did not have a separate cause of action in tort for misrepresentations related to the division of property).

It is issue preclusion, not claim preclusion, that bars litigants from relitigating as tort actions, matters that were resolved in a divorce proceeding. And although a spouse often can bring a tort action in a divorce proceeding, the spouse can elect to pursue a separate action. Thus, the requisite identity between the actions is lacking. *Stuart*, 143 Wis. 2d at 351.

### 3.5. Additional Allegations

Only a few allegations survive the application of the *Rooker-Feldman* doctrine and issue preclusion.

#### 3.5.1. Court Reporter

The *Rooker-Feldman* doctrine and issue preclusion may well bar the court from considering Fitzgibbon's claim against Stephanie Koenigs, the court reporter during a hearing. The court, however, is unable to assess the application of these principles

because the nature of Fitzgibbon's claim against Koenigs is unclear. It appears that she is alleging that by simply being present during a relevant hearing she is liable because, but for her presence, the hearing could not have proceeded. (ECF No. 15, ¶ 98.) This, however, falls far short of stating a plausible constitutional claim. *See Wood v. Moss*, 572 U.S. 744, 763 (2014) (noting that defendant cannot be liable for a constitutional tort unless she personally acted unconstitutionally).

Fitzgibbon also seems to allege that Koenigs failed to provide a verbatim record. However, the allegations are vague and conclusory. In any event, while state law imposes such a duty on court reporters, Wis. Stat. § 757.57(5), noncompliance does not present a constitutional or statutory action, *cf. DSG Evergreen Family Ltd. P'ship v. Town of Perry*, 2020 WI 23, ¶47, 390 Wis. 2d 533, 939 N.W.2d 564 (discussing the question of whether a statute creates a private cause of action).

While Fitzgibbon notes that court reporters are not entitled to absolute judicial immunity from constitutional claims for deliberate alterations of transcripts, *see Antoine v. Byers & Anderson*, 508 U.S. 429, 436-37 (1993); *but see Evers v. Utschig*, 175 Wis. 2d 625, 502 N.W.2d 284, 1993 Wisc. App. LEXIS 235 (Ct. App. 1993) (unpublished), she does not allege that Koenigs altered a transcript. Rather, Fitzgibbon alludes to the transcript of theJanuary 6, 2023, hearing as being inconsistent with the re-created MSA. As the court understands her allegations, it is not that Koenigs altered a transcript but rather that the court, in re-creating the MSA, created a document that had the appearance of having been created earlier. As a result, the re-created MSA was inconsistent with the transcript. But the

inconsistency arose not because the court reporter deliberately and corruptly altered a transcript but because those who re-created the MSA did so in a way that was not consistent with what was contained in the transcript.

#### 3.5.2. Judicial Assistant

As noted above, the bulk of Fitzgibbon's claim against Woldt relates to her preparation of the judgment and thus is barred by *Rooker-Feldman*. Fitzgibbon, however, makes passing reference to Woldt having allegedly denied the parties' request for mediation and failed to mark an exhibit. It is unclear if Fitzgibbon intended the allegations to constitute independent causes of action, but the court addresses them for the sake of completeness.

The complaint lacks details with respect to the alleged request for mediation, butaccepting the allegations as true and drawing all reasonable inferences therefrom, a judicial assistant's denial of requested mediation does not plausibly violate any constitutional right. As for Woldt's alleged failure to mark an exhibit, the amended complaint is clear that Woldt acted on Judge Keberlein's instructions. (ECF No. 15, ¶ 51.) Woldt is entitled to judicial immunity for such an act. *See Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992).

For the same reason, if the court had jurisdiction over Fitzgibbon's claim against Woldt regarding the preparation of the judgment, Woldt would be entitled to judicial immunity. And Judge Keberlein likewise would enjoy judicial immunity if the court had jurisdiction over the claims against him. Holding a hearing, taking evidence, making findings, and entering judgment are all squarely judicial acts.

Fitzgibbon's allegations that Judge Keberlein's actions were not authorized by law fall far short of satisfying the extremely limited circumstances under which a judge may lose judicial immunity. An act that exceeds a judge's authority is not the same as an act that is in the "clear absence of all jurisdiction." *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). The fact that a judge allegedly did something unlawful or improper is what gives rise to the alleged tort. If such an allegation was all that was necessary to defeat judicial immunity, the immunity would be meaningless.

**3.5.3. Clerk of Court**

The loss of the edited MSA set off this chain of events. Fitzgibbon blames the loss on Tara Berry as the person ultimately responsible for safeguarding documents filed with the court. As noted, issue preclusion prevents Fitzgibbon from recovering damages based on the existence of any discrepancy between the lost MSA and the re-created MSA. However, it is plausible that the loss of the MSA damaged Fitzgibbon in other ways. For example, the lost MSA required additional proceedings that plausibly resulted in additional attorney fees for Fitzgibbon. Thus, the court considers whether such a claim is cognizable.

Fitzgibbon does not allege that Berry is the person who actually lost the document. Rather, she alleges that it had to be either Berry or someone in her office. However, "the buck stops with the boss" is not a viable theory of liability under § 1983. Under § 1983, persons are responsible only for their own acts and are not vicariously liable for the acts of subordinates. *Buckhana v. Ek*, No. 2:25-cv-02147-

JEH, 2025 U.S. Dist. LEXIS 206818, at *8 (C.D. Ill. Oct. 21, 2025) (citing *Iqbal*, 556 U.S. at 667; *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc)).

Even if Fitzgibbon alleged that it was Berry who lost the edited MSA, Fitzgibbon's due process claim would fail. The Fourteenth Amendment does not protect persons from such mistakes by government officials. *Streckenbach v. Vandensen*, 868 F.3d 594, 597 (7th Cir. 2017) ("negligent bureaucratic errors do not violate the Due Process Clause") (citing *Daniels v. Williams*, 474 U.S. 327, 336 (1986)); *see also Kincaid*, 969 F.2d at 602 (holding that clerk's negligent failure to file a complaint "does not rise to the level of a constitutional violation actionable under section 1983"); *Bradley v. Christofeno*, No. 3:26-CV-21-PPS-JEM, 2026 U.S. Dist. LEXIS 137007, at *3 (N.D. Ind. June 22, 2026) (holding that clerk of court's error in scanning a letter did not present a cognizable constitutional claim). Fitzgibbon explicitly alleges that the loss occurred because of "clerical negligence." (ECF No. 15, ¶ 114, B. d.; *see also* ECF Nos. 25 at 12, ¶ 27; 27 at 5, ¶ 11, 14, ¶ 45; 31 at 8, ¶ 21, a.).

#### 3.5.4. Conspiracy

Fitzgibbon alleges that all the defendants violated 42 U.S.C. § 1985(2) and (3). The second clause of 42 U.S.C. § 1985(2) prohibits conspiracies to "obstruct the course of justice in state courts." *Hernandez v. Dart*, 635 F. Supp. 2d 798, 809 (N.D. Ill. 2009) (quoting *Kush v. Rutledge,* 460 U.S. 719, 725 (1983)). The next subsection, 42 U.S.C. § 1985(3), more generally "provides a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 827 (7th

Cir. 2022) (quoting *Bowman v. City of Franklin*, 980 F.2d 1104, 1108-09, 1108 n.4 (7th Cir. 1992)).

As a preliminary matter, Fitzgibbon does not plausibly allege the existence of a conspiracy. Rather, she alleges simply that the defendants' collective actions gave rise to the circumstances of which she complains. A conspiracy requires an agreement among the parties, not merely a sequence of actions or chain of events. *See Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 758 (7th Cir. 2024). The fact that the court ruled against her is not a sufficient basis to sustain a conspiracy claim. *Williams v. Heartland Realty Inv'rs, Inc.*, No. 24-1491, 2025 U.S. App. LEXIS 29484, at *5 (7th Cir. Nov. 10, 2025).

Fitzgibbon's conspiracy claims fail for additional reasons. To state a claim under § 1985(3), "the plaintiff must plead that the conspiracy was motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Milchtein*, 42 F.4th at 827 (quoting *Bowman*, 980 F.2d at 1109); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (citing *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)).

Plaintiffs pursuing claims under the state court clause of § 1985(2) likewise "must allege class-based animus." *Stewart v. Derbort*, No. 24-CV-2186, 2025 U.S. Dist. LEXIS 184971, at *18 (C.D. Ill. Sep. 8, 2025) (quoting *Hernandez*, 635 F. Supp. 2d at 810; citing *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995)); *Kowalski*, 893 F.3d at 1001 (citing *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994)).

Fitzgibbon does not allege that any class-based animus motivated the purported conspiracy. To the contrary, Fitzgibbon explicitly alleges: "The conspiracy was motivated by a systemic need to shield the State (including Court and County) from its records retention liability." (ECF No. 15, ¶ 108, c.) As a result, she has failed to allege a plausible claim under 42 U.S.C. § 1985(2) or (3).

**4. Conclusion**

Federal courts have limited jurisdiction, which means that they can hear only certain types of disputes under certain circumstances. One broad category of claims that a federal court generally cannot consider is any claim that will upset a state court judgment. Regardless of how wrong or unfair a losing party believes a state court judgment to be, the federal district court cannot remedy it. Similarly, federal courts lack authority to consider disputes that come within the broad category of "domestic relations." "[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt*, 504 U.S. at 703 (1992) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)). And once an issue is decided in one case, a party cannot obtain a different conclusion in a new action.

These principles bar nearly the whole of Fitzgibbon's amended complaint. The primary relief that she seeks—voiding of the state court judgment or related injunctive relief—is strictly prohibited by *Rooker-Feldman*. Issue preclusion bars her from obtaining damages for any claim that the re-created MSA detrimentally differed from the lost edited MSA; the state court determined that the reconstructed MSA

reflected the terms of the parties' lost agreement. Her claim that she remains married and sustained injuries as a result is likewise barred by *Rooker-Feldman*. A state court judgment of divorce conclusively dissolves a marriage regardless of a party's disagreement.

*Rooker-Feldman* deprives the court of jurisdiction over the whole of Counts I, II, and VIII. The court likewise lacks jurisdiction over the claim in Count VI regarding the preparation of the judgment and any claim that Fitzgibbon remains married and suffered damages as a result. Issue preclusion bars the whole of Count V and, as to any claim over which the court has jurisdiction, any claim for damages arising from an alleged discrepancy between the re-constructed MSA and the lost edited MSA. As to all other claims, Fitzgibbon has failed to state a claim upon which relief may be granted. Fitzgibbon's due process claim against the Clerk of Court individually for extra costs incurred in re-creating the lost MSA (Count III) fails because she has failed to allege that the defendant was the person who lost the document or that the loss was the result of anything other than mere negligence. The latter reason also bars Fitzgibbon's claim against the Clerk of Court in her official capacity. (Count IV.) Her due process claim against the court reporter (Count VII) fails because she does not plausibly allege that the court reporter deliberately altered any transcript. As to the court reporter and the Clerk of Court, non-compliance with state law does not necessarily give rise to a due process claim. *See Cozzi v. Vill. of Melrose Park*, 592 F. Supp. 3d 701, 710-11 (N.D. Ill. 2022). Finally, Fitzgibbon's conspiracy claim (Count IX) fails because she has not plausibly alleged the existence of a conspiracy or that

any conspiracy was the product of invidious discrimination against a protected class. Consequently, the court must grant the defendants' motion to dismiss and dismiss Fitzgibbon's amended complaint in its entirety.

Ordinarily, the court will afford a party at least one chance to amend a complaint before dismissing the action. Fitzgibbon has already amended her complaint once. Moreover, an opportunity to amend is unnecessary when amendment would be futile. No amendment could result in a plausible claim whereby Fitzgibbon would obtain the relief that is at the core of this action—the federal court voiding the state court judgment. Nor is there any possibility that Fitzgibbon could present a claim that would entitle her to damages she allegedly suffered as a result of the re-created MSA being different than the lost edited MSA. The state court found that the re-created MSA reflects the terms of the lost MSA. The only circumstances that might plausibly evade these significant obstacles and give rise to a cognizable claim are those associated with the actual loss of the edited MSA and any damages Fitzgibbon sustained as a result of having to re-create the lost MSA, *e.g.*, additional attorney fees. However, to state a plausible constitutional claim for the lost MSA, Fitzgibbon would need to allege both who specifically lost the document and that the loss was no mere accident. Fitzgibbon, however, explicitly alleges that the loss occurred because of "clerical negligence." (ECF No. 15, ¶ 114, B. d.; *see also* ECF Nos. 25 at 12, ¶ 27; 27 at 5, ¶ 11, 14, ¶ 45; 31 at 8, ¶ 21, a.). As such, it does not appear that Fitzgibbon could amend her complaint to state a plausible cause of action, and dismissal of this action in its entirety would be appropriate.

However, following her filing the amended complaint in this action, Fitzgibbon filed two related and apparently duplicative suits in this court. *See Fitzgibbon v. Keberlein*, 1:26-cv-00625-BBC (E.D. Wis.); *Fitzgibbon v. Keberlein*, 1:26-cv-01376-BBC (E.D. Wis.). In each case she states that she anticipates filing many other related lawsuits. (*See, e.g.*, ECF No. 15, ¶ 2.)

Generally, this sort of piecemeal litigation is inappropriate. When a plaintiff alleges injury from single related series of events, all claims and all defendants should be presented in a single action. *See* Fed. R. Civ. P. 18; 19. Failure to do so risks the application of the rule against claim splitting. *See, e.g.*, *Scholz v. United States*, 18 F.4th 941, 951-52 (7th Cir. 2021); *Medcor, Inc. v. Kelley*, No. 1:23-CV-02109, 2025 U.S. Dist. LEXIS 174505, at *13 (N.D. Ill. Sep. 8, 2025).

In the event that these subsequent suits contained any plausible cause of action, the rule against claim splitting may nonetheless require dismissal for Fitzgibbon's failure to include the claim in the present action. In light of Fitzgibbon's pro se status, the court finds that, before dismissing this action and thus potentially triggering the application of the rule against claim splitting, it is appropriate to give Fitzgibbon an opportunity to file a second amended complaint. By separate order, the court will consolidate the related actions and dismiss the pending complaints. If Fitzgibbon believes that, in light of the court's present decision, she has any plausible claim and she wishes to proceed with this action, within 21 days of this order Fitzgibbon must file a second amended complaint. The second amended complaint must contain all related claims against all related defendants. If Fitzgibbon fails to

timely file a second amended complaint the court will dismiss this action and enter judgment accordingly. If Fitzgibbon simply believes that the court's decision is legally incorrect and she wishes to appeal, filing a second amended complaint is unnecessary. Fitzgibbon may instead appeal. Fitzgibbon should file a second amended complaint only if she believes that she can state a plausible claim for relief consistent with the court's present decision.

**IT IS THEREFORE ORDERED** that the defendants' motions to dismiss (ECF Nos. 17; 19; 21) are **GRANTED**. The amended complaint is dismissed. As set forth above, the claims over which the court lacks jurisdiction are dismissed without prejudice. The remaining claims are dismissed with prejudice. Within **21 days** of this order, the plaintiff may file a single consolidated second amended complaint.

Dated at Green Bay, Wisconsin this 17th day of August, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge